## HEGLER *v.* FAULKNER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 166. Submitted December 13, 1893. — Decided April 23, 1894.

A report of the names of Indians and half-breeds entitled to participate in an allotment of land, made under the act of July 31, 1854, 10 Stat. 315, to the Indian bureau under instructions to report in full a list of all applicants, showing names, age, sex, etc., is not admissible in evidence

in an action between two parties, each of whom claims under the same
person and the same allotment, in order to show the age of that person
at the time of the allotment.

In view of the Nebraska statutes concerning the operation of statutes of
limitation, there was no error in the instruction of the court below in
that respect.

J. D. HEGLER, a citizen of the State of Ohio, brought an
action in the District Court of Richardson County, Nebraska,
on October 4, 1878, against George Faulkner, James Cottier,
August Schoenheit, and Edwin S. Towle, citizens of the State
of Nebraska, to recover from the defendants the possession of
certain land situated in the county of Richardson, to which
land the plaintiff, in his petition, claimed title, and also to re-
cover the rents and profits of the said property for the period
for which such possession had, as alleged, been withheld.
Upon motion of the defendants, the case was removed, on
March 25, 1879, into the Circuit Court of the United States
for the District of Nebraska, where the defendants filed an
answer to the petition, on May 17, 1879, denying that the
plaintiff then had, or had ever had, any title to the land in
question, and asserting title thereto in themselves. The case
was tried in the Circuit Court, before the court and a jury,
and, a verdict having been found for the defendants, judg-
ment in their favor was entered on January 10, 1885. The
case was then brought to this court upon a writ of error sued
out by the plaintiff, but because the record, as then filed, con-
tained no petition or order for the removal of the case from
the state court to the said Circuit Court, nor any statement
of the citizenship of the parties, and because it did not appear,
therefore, that the Circuit Court had had jurisdiction of the
case, the judgment was reversed, and the case remanded for
further proceedings. 127 U. S. 482. Those defects in the
record were afterwards cured, and on June 13, 1889, judgment
was again entered in the court below in favor of the defend-
ants, and the plaintiff again sued out a writ of error from
this court.

On the trial the plaintiff introduced evidence tending to
show that on April 15, 1859, George Washington, a half-breed

Indian of the Iowa tribe, received from William M. Stark, special Indian agent, a certificate of allotment of the land in controversy, issued by virtue of the provisions of the act of Congress of July 31, 1854, c. 167, § 5 [4], 10 Stat. 315, 332, which gave effect to a treaty made on July 30, 1830, 7 Stat. 328, under which certain lands belonging to the tribes, which joined in the treaty, were set apart for the half-breeds of those tribes, by directing the President to cause the reserved tracts described in the treaty to be surveyed and allotted in fee simple to the persons entitled to receive them; that on April 16, 1859, George Washington conveyed the land so allotted to him to Houston Nuckolls; that Nuckolls conveyed the same on April 20 to A. S. Ballard; that Ballard conveyed to James McMillan on September 16, and that on October 13, 1859, McMillan conveyed to the plaintiff. On September 10, 1860, as the plaintiff's evidence further tended to show, George Washington received from the government a duly executed patent for the land.

The defendants also claimed to derive title from George Washington, the evidence on their behalf tending to prove that by deed, dated November 3, 1866, he conveyed the land to the defendants Schoenheit and Towle, and that on February 28, 1868, he executed another deed to the same parties for the same property.

For the purpose of showing that George Washington was of full age when he transferred the land to Nuckolls, the plaintiff offered in evidence a list bearing the heading, "Office of Indian Affairs," the date February 4, 1858, and containing the name, sex, age, degree of blood, and tribe of certain Indians. Upon this list was the name of George Washington, and opposite the name appeared the figures 20, in the column headed "Age." The agent, Stark, testified that this list was received by him from the Indian department, and that it contained the names of the half-breeds entitled to allotment of land in the reservation described in the treaty.

To show under what directions of the government the list was prepared, the plaintiff offered in evidence a letter from the Commissioner of Indian Affairs to Joseph L. Sharp, which

began with a statement of the provisions of the treaty above referred to, and of the said act of Congress, and proceeded as follows:

" To enable the President to comply with the act it is necessary to ascertain the number and names of the half-breeds and mixed bloods entitled to participate. You have been appointed commissioner to act under the following instructions: To give notice for all persons interested to appear before you with their applications and evidence. Before commencing to take testimony consult with the Indian agents and chiefs of the tribes. In making report have regard not merely to proof applicants may submit, but also to information from above mentioned and other sources you consider reliable. You will be furnished by the superintendent of Indian affairs at St. Louis with all the information he may discover bearing on the subject. I direct that you prepare your report in full to embrace a list containing names of all applicants, arranged by tribes and families and single persons, showing names, age, sex, relationship to the tribe, place of residence, who are orphans or wards, and such other facts as you consider useful and proper. In every case, whether admitted or rejected, give briefly your reasons. Transmit your report, with evidence taken, to this office without delay. The several Indian agents for the particular tribes will be instructed to render you all proper assistance in the premises. Before commencing your duties take and subscribe an oath of office before some officer authorized to administer oaths, that you will support the Constitution of the United States and faithfully discharge your duties as such commissioner, which transmit to this office."

Upon objection made by the defendant, the court excluded the portion of Stark's testimony relating to the list, and refused to admit the list or the letter of instructions to Sharp in evidence. To these acts of the court the plaintiff excepted, and likewise to certain instructions given and refused.

*Mr. A. H. Garland* and *Mr. H. J. May* for plaintiff in error.

The statutes then in force in Nebraska, so far as applicable to this case, are as follows: "Sec. 42. A minor is bound not only by contracts for necessaries, but also by his other contracts, unless he disaffirms them within a reasonable time after he attains his majority and restores to the other party all money or property received by virtue of the contract and remaining within the control of the ward at any time after attaining his majority. Sec. 43. No contract can be thus disaffirmed in cases where, on account of the minor's own misrepresentations as to his majority or from his having engaged in business as an adult, the other party has good reason to believe the minor capable of contracting." Sess. Laws Neb., 2d session, 165.

This act was taken from the Iowa Code. See for its interpretation, *Oswald* v. *Broderick*, 1 Iowa, 380; *Prouty* v. *Edgar*, 6 Iowa, 353.

A reasonable time for an infant to disaffirm is not a question of law, as held by the court, but a question of fact to be determined upon the circumstances of each case. *Jenkins* v. *Jenkins*, 12 Iowa, 195; *Stout* v. *Merrill*, 35 Iowa, 47; 1 Greenl. Ev. § 49 (14 ed.). Two years is an unreasonable time, but the court in this case erroneously instructed that, as a matter of law, a year or so was not unreasonable. *Wright* v. *Germain*, 21 Iowa, 585. At the time of the transactions involved herein, the law of Nebraska limiting the time for infants to sue after coming of age was as follows: "Sec. 246. The above limitation of action for the recovery of real property shall not apply to minors so far as to prevent them from having at least one year after attaining their majority within which to commence such actions." Sess. Laws Nebraska, 1865, 1st sess., p. 81. By analogy we can fairly say that, unless there be special circumstances taking the case out of the general rule, infants must disaffirm deeds within one year after becoming of age.

A superficial glance over this record will convince the court, the great fundamental error committed by the court below was, in permitting itself to go behind the finding and judgment of the President of the United States through a branch

of the executive department of the government, in matters committed especially to the President by Congress.    The allotment of these lands to the half-breeds was expressly devolved upon the President by act of Congress (10 Stat. 332) in order to carry out the treaty of July 15, 1830 (7 Stat. 328).

Here we have a matter, belonging in the necessity of things to the executive branch of the government, and placed there in so many words by act of Congress.    The power is given to the President to carry out and enforce these treaty stipulations.    He is left to arrange his own means of so doing.

The President, under this law, called upon the Indian Bureau, a part of the Interior Department, as the record shows, to do this, and it was done, and in its doing all questions of age, breed, and of whatever else was required under the treaty to authorize the finding or judgment, are supposed to have been found, and cannot under ordinary rules be questioned in this way, and certainly they cannot be so questioned by any co-ordinate branch of the government.    It is surrounded with this sanctity as well as that of the judgment of a court of competent jurisdiction.    It is *res judicata* in the highest and best sense of the term, and in every sense of it.    *Johnson* v. *Towsley*, 13 Wall. 72; *Martin* v. *Mott*, 12 Wheat. 19; *Allen* v. *Blunt*, 3 Story, 742.

This order or judgment has never been appealed from; it has never been charged or attacked directly with fraud or mistake, and if this finding is to be disregarded because of proof, or supposed proof as to age or any other fact in a proceeding of this kind, then this determination of the executive is utterly worthless for any purpose.

See how iron-bound are the final findings — the decisions of the departments — as against all attacks of the incoming heads of those departments, just as much as the decisions of the courts are as against the attacks of new and succeeding judges in those courts, and it must naturally be so.    *United States* v. *Bank of the Metropolis*, 15 Pet. 377.; *Ex parte Randolph*, 2 Brock. 447.    And how else could public business be transacted and the government relations kept up and enforced?    These papers from the Interior Department

were competent as offered, and should have been received in evidence. Rev. Stat. §§ 882–4; *United States* v. *Percheman,* 7 Pet. 51; *United States* v. *Wiggins,* 14 Pet. 334; *United States* v. *Davenport,* 15 Howard, 1; *Culver* v. *Uthe,* 133 U. S. 655.

So that when the court below went back of this finding and rejected it, it travelled away beyond its authority and put aside all law, and here is the error, regardless of all others, that is fatal to this decision in that court, and it is hoped it will be reversed.

*Mr. Isham Reavis* and *Mr.. C. F. Reavis* for defendants in error.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The plaintiff contended, in the court below, that the Indian, George Washington, was of full age on April 16, 1859, the date of the conveyance to Nuckolls, or, at all events, so represented himself to be, and that Nuckolls relied upon such representations, and purchased and paid for said land accordingly. These questions of fact were submitted by the court to the jury, and found by them in favor of the defendants.

The errors assigned are to the action of the court in rejecting evidence offered by the plaintiff, and in refusing instructions asked for him. The first offer was that of an exemplification from the records of the Indian department of instructions given to one Joseph L. Sharp, dated May 14, 1856, under which Sharp acted as an agent for the United States in ascertaining the number and names of the half-breeds entitled to participate in the division of the lands granted by the treaty of Prairie du Chien. Among such instructions the agent was directed to prepare "a report in full to embrace a list containing names of all applicants, arranged by tribes and families and single persons, showing names, age, sex, relationship to the tribe, place of residence, who are orphans or wards." This was followed by an offer of a certified copy of a census

or list of half-breeds entitled to lands, bearing the heading "Office of Indian Affairs," dated February 4, 1858, containing the name, sex, age, degree of blood, and tribe of certain Indians. Upon this list was the name of George Washington, and opposite the name appeared the figures "20" in the column headed "Age." The purpose of these offers was stated to be to show that George Washington was twenty years of age at the date February 4, 1858, and that he was, therefore, of full age when, on April 16, 1859, he conveyed the land allotted to him to Houston Nuckolls. The court below regarded the evidence offered as inadmissible for that purpose, and the rejection of the offers is the subject of the first and second assignments of error.

As leading up to the controlling question, namely, the age of the half-breed George Washington, the offer of the instructions under which the agent acted in procuring information for his report would seem to be unobjectionable, but its rejection would not constitute reversible error unless the offer that followed was admissible. That was the offer to put in evidence a census or list filed in the Office of Indian Affairs, containing the names and ages of half-breeds, who, upon testimony presented to that office, were regarded as entitled to participate in the allotments or assignments of the lands awarded by the treaty. If the latter offer was not a proper one, then the rejection of the preceding offer was immaterial.

Was, then, this list, filed in the Indian department, and which, or a copy of which, had been sent to William M. Stark, special agent to assign or allot these lands, admissible in evidence in a legal controversy, to prove the age of one of said Indians?

It is contended, on behalf of the plaintiff in error, that this list is in the nature of a finding or judgment of the executive department of the government, in matters committed specially to the President by Congress; that the allotment of these lands to the half-breeds was expressly devolved upon the President by act of Congress, 10 Stat. 332, in order to carry out the treaty; that this act of Congress was one making appropriations for the Indian department and for fulfilling treaty

stipulations; that the department, under the directions of the President, made rules and regulations to enforce this provision of law, and did enforce it.

It is, indeed, true that the President speaks and acts through the heads of the several departments, in relation to subjects that pertain to their respective duties, and that the allotment of these lands by the Indian department must be considered as made by the President in pursuance of the terms of the act of Congress, and of the treaty. And it may be admitted that the decision of the special Indian agent, in identifying the Indian half-breeds entitled to participate, and in allotting the portion of each, would, in the absence of fraud, be conclusive. *Wilcox* v. *Jackson*, 13 Pet. 498, 511.

Conclusiveness is a characteristic of the judgment of every tribunal acting judicially, whilst acting within the sphere of its jurisdiction, where no appellate tribunal is created. But such conclusiveness is restricted to those questions which are directly submitted for decision. In the case in hand, doubtless the identity of the half-breed George Washington, and his right to receive the land in question as his share of the lands appropriated by the treaty, were finally found. But neither the treaty, the act of Congress, nor the instructions of the department contemplated any special inquiry into the ages of the Indians. It is true that, in the letter of instructions, the agent was directed to report as well the age as the sex and tribal relations of the claimants. But this was merely to enable the agent, when he came to allot the lands, to identify the persons entitled to participate. When the allotment was completed, and was followed, first, by a certificate, and, finally, by a patent, the purposes of the inquiry were fulfilled, and the list used to aid the government functionaries in the task of allotting the lands cannot be regarded as a record to be resorted to afterwards, in disputes between other parties, to prove the age of the Indians. No provision was made, in either the act of Congress or the rules and regulations of the Indian department, to preserve the list as a muniment of title, much less as a public record admissible to prove merely incidental recitals based on hearsay. Such a

list does not come within the rule which permits, for some purposes, the use of "official registers or books kept by persons in public office, in which they are required . . . to write down particular transactions occurring in the course of their public duties and under their particular observation." 1 Greenl. Ev. § 483. "It must be remembered that official registers are not in general evidence of any facts not required to be recorded in them, and which did not occur in the presence of the registering officer. Thus, a parish register is evidence only of the time of a marriage and of its celebration *de facto*, for these are the only facts necessarily within the knowledge of the party making the entry. So a register of baptism, taken by itself, is evidence only of that fact. . . . Neither is the mention of the child's age in the register of christenings proof of the day of its birth, to support a plea of infancy." 1 Greenl. Ev. § 493.

In *Mutual Benefit Life Ins. Co. v. Tisdale*, 91 U. S. 238, where the right of action depended on the death of a third person, it was held that letters of administration upon the estate of such person granted by the proper probate court, in a proceeding to which the defendant was a stranger, afforded no legal evidence of such death; and it was said: "The only ground for the admission of the letters of administration is, that granting them is a judicial act; but a judgment is not evidence of any matter to be inferred by argument therefrom, or which comes collaterally in question, or is incidentally cognizable " — citing the *Duchess of Kingston's case* and many others.

In *Connecticut Life Ins. Co. v. Schwenk*, 94 U. S. 593, it was held that an entry in the minute-book of a lodge of Odd Fellows, of which the deceased was a member, made prior to the issue of a policy, and showing his age as recorded by the secretary of the lodge in the usual manner of keeping its records, was not admissible as evidence of such age.

We do not deem it necessary to discuss this question at greater length. Our conclusion is that the court below did not err in excluding the list offered. It was not an official record, intended as a mode of preserving the recollection of

facts, nor was it based upon the personal knowledge of the party making the entry. It was mere hearsay.

Error is assigned to the instructions given by the court to the jury on the subject of disaffirmance by George Washington within a reasonable time after becoming of age. The statutes of Nebraska on this subject were as follows:

"Sec. 42. A minor is bound not only by contract for necessaries, but also by his other contracts, unless he disaffirms them within a reasonable time after he attains his majority and restores to the other party all money or property received by virtue of the contract and remaining within control of the ward at any time after attaining his majority.

"Sec. 43. No contract can be thus disaffirmed in cases where, on account of the minor's own misrepresentations as to his majority or from his having engaged in business as an adult, the other party had good reason to believe the minor capable of contracting." Act of January 26, 1857, c. 53. Sess. Laws Neb., 2d Session, 1856, 165.

The instruction excepted to was in the following terms: "There might be some question about the rescinding of the contract within a reasonable time, but if the testimony should satisfy the jury that George Washington was but fifteen or sixteen years old, or thereabout, in 1859, when it is claimed he made the deed to Houston Nuckolls, then it would take until 1865 for him to attain his majority, and he would have to disaffirm the contract within a reasonable time after attaining his majority, and within a year or so would be a reasonable time."

The ground of the objection is the contention that a reasonable time for an infant to disaffirm is not a question of law, but a question of fact to be determined upon the circumstances of each case.

It cannot be fairly said that the court below treated the question as one of law and gave a binding instruction upon it. On the contrary, the question was left to the jury, with the observation that within a year or so would be a reasonable time. The Nebraska statutes of 1855 contain the following section: "Sec. 246. The above limitations of action for the

recovery of real property shall not apply to minors so far as to prevent them from having at least one year after attaining their majority within which to commence such actions." There is no substantial difference between "at least one year after attaining majority," and "within a year or so," and even if the remark of the learned judge be regarded as an instruction, it would seem, by analogy to the statute of limitations, to have been well founded.

The record discloses several other exceptions, but they do not seem to be relied on in the brief of the plaintiff in error. It is said that the charge contained inconsistencies and must have confused the jury. Such a statement is not entirely without foundation, but we think that upon the whole the case was fairly submitted. It is obvious that the case turned upon the question as to the age of George Washington at the time of the allotment and at the time of making the conveyance by him to Houston Nuckolls, under whom the plaintiff claims, and that question is treated in the briefs of both parties as the controlling one in issue.

With the list furnished by the department for the use of the agent out of the case, the weight of the evidence as to the minority of the half-breed at the time of his conveyance to Nuckolls was plainly with the defendants, and warranted the verdict of the jury in their behalf.

The judgment of the court below is

*Affirmed.*