## PHILLIPS *et al.* v. BYRD.

No. 3419.   Opinion Filed October 13, 1914.

(143 Pac. 684.)

1.   **INDIANS—Alienation of Lands—Determination of Age—Construction of Statute.** The act of Congress of May 27, 1908 (35 St. at L. 313, c. 199), in part provides: " * * * The enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman." Held, that such act is not, nor was it, intended to be a rule of evidence; but the purpose of said act is to prescribe terms and conditions upon which members of the Five Civilized Tribes of Indians may alienate their lands, and to prescribe a fixed and uniform rule by which those contracting with such members of said tribes could determine the exact date minors may reach their majority for the purpose of alienating their lands.

2.   **SAME—Alienation of Allotments—Determination of Age—Operation of Statute.** That part of said act of Congress, quoted supra, has no application to a transaction relating to a contract or sale of lands completed prior to the date said act took effect. The enrollment records of the Commissioner to the Five Civilized Tribes are conclusive evidence as to the age of any enrolled allottee when applied to any transaction relating to a contract or sale of lands of such allottee entered into subsequent to the taking effect of said act.

3.   **CHAMPERTY AND MAINTENANCE—Eminent Domain—Deed to Allotment—Condemnation Proceedings—Rights of Interpleader—Title.** It is alleged and not denied that plaintiff in error, the Chelsea Gas Company, was in the open and adverse possession of 30 acres of land in controversy under a warranty deed for about

two years immediately before defendant in error purchased and received a deed of conveyance from the allottee. Held, that defendant in error, as petitioner in the trial court, was required to recover upon the strength of his own title.

Held, further, that the deed of defendant in error was a nullity, as to the Chelsea Gas Company, and was insufficient to support a judgment in his favor against the Chelsea Gas Company; hence said judgment is contrary to the law and the evidence.

Held, further, the court erred in failing to grant a new trial.

(Syllabus by the Court.)

*Error from District Court, Rogers County;*
*T. L. Brown, Judge.*

Condemnation proceedings by the Town of Chelsea against A. G. Phillips and another, wherein H. H. Byrd was permitted to interplead. From the judgment, defendants bring error. Reversed in part, with directions, and affirmed in part.

*J. W. Swartz,* for plaintiffs in error.

*Bond & Howard,* for defendant in error.

RIDDLE, J. This controversy grows out of the condemnation of 40 acres of land by the incorporated town of Chelsea for waterworks purposes. The town of Chelsea, on September —, 1910, filed its petition in the district court of Rogers county, praying for the condemnation of the northeast quarter of the southwest quarter of section 23, township 24 north, range 17 east, in Rogers county, Okla. After alleging the necessity for the land, it is further alleged that the title to the land was in dispute. Appraisers were appointed, and they appraised the value of the surface of the land taken at $10 per acre. Public notice was given in a newspaper, in accordance with the order of the court. The amount of damages as found by the commission, to wit, $400, was deposited with the clerk of the court. Thereafter, upon order of court, defendant in error was permitted to interplead in said cause, and he filed his petition therein for the purpose of recovering the funds deposited with the clerk, and adjudicating and quieting his title to the land, and removing any alleged cloud existing thereon. In his petition he alleges that he is the owner of the land by virtue of a certain warranty deed,

executed by the allottee, Winona Glass, *nee* White, on the 7th day of June, 1908. He sets out the deeds under which plaintiffs in error assert title to' the land, and claims that such conveyances are void, for the reason that on the date of the execution of same by the allottee, Winona Glass, she was a Creek freedman and member of the Creek Tribe of Indians, and a minor. He attaches to his petition a copy of the deed under which he asserts title. The consideration expressed therein is $5. He prays that his title may be quieted, and that he be decreed the owner of said land and the $400 fund, held by the clerk, and that the deeds held by plaintiffs in error respectively be canceled. Upon the filing of this petition, an order of court was made that the same be served upon plaintiffs in error; that they each be required to appear and show cause, if any they had, why the funds in the hands of the clerk should not be paid to said petitioner, Byrd, 'and to set up any right they might have in and to said funds. The Chelsea Gas Company filed its petition in said cause, wherein it alleged, in substance, that the said Winona White received the following portion of said · land in controversy as a part of her allotment, to wit: West half and the southeast quarter of the northeast quarter of the southwest quarter of section 23, township 24 north, range 17 east, in what is now Rogers county, Okla., that on the 19th day of June, 1905, the said Winona White, a single woman, executed a warranty deed to J. T. Brown and S. M. Dodson, conveying the above described land for a valuable consideration. It is further alleged:

"That the Chelsea Gas Company is the owner and in possession of said described lands through a deed of conveyance from the assignees of the said J. T. Brown and S. M. Dodson, and also by deed of conveyance from S. M. Dodson and John T. Brown; that the Chelsea Gas Company purchased said lands on September 26, 1908, and since that time they have at all times been in free and uninterrupted possession of same, and that at the time of the condemnation proceedings brought by the incorporated town of Chelsea and at the time of the rendition of the judgment of condemnation by this court, that the Chelsea Gas Company was the owner and in possession of said lands, and was and is entitled to the proceeds of the sale of that part described above."

It is then alleged that the deed held by defendant in error is void, and a cloud on its title. The petition was duly sworn to, to which petition there was no reply filed. Plaintiff in error Phillips appeared and asserted title to the other ten acres of the 40 acres described in controversy, but makes no allegation as to possession. There was no objection made to any irregularity in the manner these proceedings were instituted and maintained, and it seems, by consent of all parties, the issues made by the filing of the different petitions was, by agreement, submitted to the court for its determination. There was no point raised in the trial court, nor in this court, as to any irregularity of the condemnation proceedings by the town of Chelsea, or as to the necessity for condemning and taking the land. The court found the issue in favor of defendant in error, awarding the $400 to him, and by its decree canceled the respective conveyances held by plaintiffs in error Chelsea Gas Company and A. G. Phillips. From this decree this proceeding in error is prosecuted.

The errors assigned necessary to be considered here are:

"(1) The trial court erred in admitting the evidence of Alice Harper and Dick Chambers as to the age of Winona White, at the time she made the conveyance to the plaintiffs in error, for the reason that the same was incompetent, irrelevant, and immaterial. (2) The trial court erred in finding for the claimant, Henry Byrd, and against the claimants, the Chelsea Gas Company and A. G. Phillips, for the reason that such finding was contrary to the evidence."

On the trial of the issues presented by the petitions of the respective parties, the court permitted defendant in error, Byrd, to introduce testimony of certain witnesses to prove that on July 19, 1905, the date the deed of conveyance was made by the allottee, Winona White, to J. T. Brown and S. M. Dodson, Winona White was a minor. This same state of facts exists as to the conveyance under which plaintiff in error A. G. Phillips claims title. The basis of the objection of plaintiffs in error to this testimony is that plaintiffs in error introduced the enrollment records of the Commissioner to the Five Civilized Tribes, tending to prove that the said Winona White was of age in March, 1905, prior to the date she executed the conveyance under

which plaintiffs in error claim title. Upon this record, two questions are presented for our determination: (1) Were the enrollment records of the Commissioner to the Five Civilized Tribes conclusive evidence as to the age of said Winona White on the date the conveyance was executed under which plaintiffs in error claim title? (2) Should it be held that these records are not conclusive evidence as to the age of said allottee, then, upon the admitted record before the court, was the judgment of the court contrary to law and the evidence? We shall consider these questions in the order in which they are stated.

Plaintiffs in error contend that under the act of Congress of May 27, 1908, the enrollment records of the Commissioner to the Five Civilized Tribes should have been received and held by the court to be conclusive evidence of the age of the allottee, Winona White. This court, in the case of Scott et al. v. Brackel, post, 143 Pac. 510, had under consideration the construction of the act of Congress of May 27, 1908, relating to the conclusive effect of the enrollment records of the Commissioner to the Five Civilized Tribes, and a majority of the court was of the opinion that such records were not conclusive, when applied to a transaction completed prior to the date of the passage of said act, but that such records were conclusive upon the issue as to the date when an allottee reaches his or her majority, when applied to a transaction relating to alienation of his or her lands subsequent to the taking effect of said act. The Chief Justice, who wrote the opinion in that case, dissented from the holding of a majority of the court upon this proposition, and he was of the opinion that the act of Congress should and was intended to put in force a rule of evidence, and that it should apply and be considered as conclusive evidence upon this issue, whether applied to transactions prior or subsequent to date of its passage. This identical question was before the Circuit Court of Appeals of the Eighth Circuit in the case of Malone v. Alderdice, 212 Fed. 668. Presiding Justice Sanborn, delivering the opinion of the court, said:

"The Commission to the Five Civilized Tribes which made the enrollment of their citizens and freedmen was a quasi ju-

dicial tribunal, empowered to determine who should be enrolled and what lands should be allotted and in what way it should be allotted to every citizen and freeman, and its adjudication of these questions and of every issue of law and fact that it was necessary for it to determine in order to decide these questions is conclusive and impervious to collateral attack. But its determination, recital, or report regarding issues not material to its answers to the questions who should be enrolled and what lands should be allotted to them and how, is, in the absence of special legislation such as the act of May 27, 1908, without judicial or other conclusive effect. *Kimberlin v. Commission to Five Civilized Tribes,* 104 Fed. 653, 662, 44 C. C. A. 109, 118.  *  *  *  The result is that, in the determination of rights which accrued and of the effect of proceedings which were concluded prior to May 27, 1908, the enrollment records of the Commission are not conclusive evidence of the age of any Indian citizen or freedman. *Hegler v. Faulkner,* 153 U. S. 109, 117, 118, 14 Sup. Ct. 779, 38 L. Ed. 653; *Williams v. Joins,* 34 Okla. 733, 126 Pac. 1013, 1015; *Perkins v. Baker,* 41 Okla. 288, 137 Pac. 661, 663."

In the case of *Hegler v. Faulkner,* 153 U. S. 109, 14 Sup. Ct. 779, 38 L. Ed. 653, in which the court had under consideration the force and effect of the records of a special commission appointed under act of Congress, directing the Indian Bureau, under instructions, to report in full a list of all applicants, showing names, ages, sexes, etc., preparatory to allotment, the court said:

"And it may be admitted that the decision of the special Indian agent, in identifying the Indian half-breeds entitled to participate, and in allotting the portion of each would, in the absence of fraud, be conclusive. *Wilcox v. Jackson,* 13 Pet. 498, 511 [10 L. Ed. 264]. Conclusiveness is a characteristic of the judgment of every tribunal acting judicially, whilst acting within the sphere of its jurisdiction, where no appellate tribunal is created. But such conclusiveness is restricted to those questions which are directly submitted for decision. In the case in hand, doubtless the identity of the half-breed George Washington, and his right to receive the land in question as his share of the lands appropriated by treaty, were finally found. But neither the treaty, the act of Congress, nor the instructions of the department contemplated any special inquiry into the ages of the Indians.  *  *  *  We do not deem it necessary to discuss this question at greater

length.    Our conclusion is that the court below did not err in excluding the list offered.    It was not an official record, intended as a mode of preserving the recollection of facts, nor was it based upon the personal knowledge of the party making the entry.    It was mere hearsay."

The only theory upon which this act of Congress could be held as conclusive evidence as to the age of an allottee, when applied to a transaction completed prior to the taking effect of said act, is to hold it to be a rule of evidence; and to hold it to be such would be tantamount to holding the act unconstitutional. It was not in the power of Congress to declare as a rule of evidence that any question, issue, or asserted fact should be conclusive upon the courts.    Congress did not have the power to create a rule of evidence which would estop the courts of its own creation from investigating and judicially determining the truth of any issue presented, and certainly had not the power to extend such a rule and make it conclusive upon the courts of this state.    This would be in violation of that part of the fifth amendment to the Constitution of the United States which reads, "* * * nor be deprived of life, liberty or property, without due process of law."    In addition, this would plainly be an invasion by the legislative department of the judicial.    If Congress in creating a rule of evidence could, in advance, declare that any asserted fact should be conclusive upon the court when an issue involving such facts might arise, then it must be conceded that Congress has the power to decree in advance any asserted state of facts or any item of evidence to be conclusive and binding upon the courts, thereby totally destroying the inherent and one of the most important functions of the judiciary; for a statute which declares what shall be taken as conclusive evidence of a fact is one which, of course, precludes investigation into the facts and itself determines the matter in advance of all judicial inquiry.    *United States v. Klein*, 13. Wall. 128, 20 L. Ed. 519; *Martin v. Cole*, 38 Iowa, 141; *Corbin v. Hill*, 21 Iowa, 70.

8 Cyc. p. 820, states the rule as follows:

"The Legislature has power to give greater effect to evidence than it possesses at common law, and in both civil and criminal proceedings it may declare what shall be *prima facie*

evidence. On the other hand, it cannot prescribe what shall be conclusive evidence, as this would be an invasion of the province of the judiciary."

The rule has been stated by Judge Cooley, in his work on Constitutional Limitations, section 453, as follows:

"Except in those cases which fall within the familiar doctrine of estoppel at the common law, or other cases resting upon the like reasons, it would not, we apprehend, be in the power of the Legislature to declare that a particular ·item of evidence should preclude a party from establishing his rights in opposition to it."

This rule was followed by this court in the case of *Taylor v. Anderson et al.*, 40 Okla. 316, 137 Pac. 1183. As we have stated, if the Legislature can, in advance, declare what shall be conclusive evidence relating to any subject-matter or issue which may be a proper subject of investigation, consideration, and determination by the judiciary in any one instance, it can in all others. The doctrine to which we give our assent is not in conflict with the rule enunciated by those courts wherein the doctrine of estoppel is announced and applied. The rule stated in those cases is controlled by a different principle of law, which has no application to the rule which we adhere to and approve. *Orient Ins. Co. v. Daggs*, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; *Yazoo & Miss. Ry. Co. v. Bent & Co.*, 94 Miss. 681, 47 South. 805, 22 L. R. A. (N. S.) 821; Cooley's Const. Lim. 453. It is suggested, however, that Congress had the power to make such conclusive upon the courts, for the reason that the determination of the issue of the ages of these Indians by the Commission to the Five Civilized Tribes is equivalent to a judgment, or, to state it in another way, that this Commission had quasi judicial power, and that Congress confided to it the authority and power to make complete rolls of these Indians, and to find such facts as were necessary to a proper identification of each, and to find or adjudicate the age of an Indian was necessary in carrying out the purpose and intent of Congress; that not only was the Commission authorized to ascertain this fact, but it was a necessary prerequisite to the allotment and division of their property in severalty. This act of Congress cannot be given this

effect, on this ground. If the finding of the Commission on this issue is conclusive, by reason of the fact that said Commission was a quasi judicial body, and to ascertain and adjudicate the issues as to the age of these Indians was necessary in carrying out the instructions of Congress, then the finding of the Commission is conclusive as a judgment of a judicial body, and not by reason of any force of the act of Congress of May 27, 1908. The finding of the Commission would be just as conclusive as a judgment, without said act of Congress, as it would be with it. Its conclusiveness, as an adjudication, would relate from the date of the final judgment, but under the conclusion reached by the Circuit Court of Appeals, in the case of *Malone v. Alderdice, supra,* which in our opinion is sound, this power was not given to the Commission; and its finding upon an issue of this character does not carry with it the verity of a judgment of a judicial tribunal upon matters within its jurisdiction. It is clear to us that all Congress intended to do by the enactment of that part of the statute under consideration was to prescribe a condition upon which this class of enrolled citizens and freedmen of the Five Civilized Tribes might alienate their lands. Congress, having reserved the exclusive right to legislate concerning the property of the Indian Tribes and their members, could have said, as a condition precedent to alienation, that an Indian should be considered a minor until he reaches the age of 25 years; and in such cases the enrollment records of the Commission to the Five Civilized Tribes should be conclusive as to what date he would reach this age. Likewise, Congress could have provided that for the purpose of alienation, the members of the Tribes should be considered at full age at fifteen years, and that the enrollment records should be conclusive as to when an enrolled citizen or freedman reached his majority, or the age which would authorize him to deal concerning his land. Or, as said by Circuit Judge Pollock, in the case of *Bell v. Cook* (C. C.) 192 Fed. 605:

"If an intending purchaser from an allottee of tribal property holding the public rolls in one hand, and the act in the other, by a comparison of the two found such allottee possessed the

power of disposition under the act and the rolls, he was at liberty to purchase and he was protected in such."

From the foregoing views, we hold that the court did not err in admitting oral testimony, tending to show the age of the allottee in question at the date of the execution of the deed under which plaintiffs in error claim title, which date was prior to the date said act of Congress took effect, and in holding that the enrollment records were not conclusive evidence as to the age of such allottee on said date.

Coming to the next contention: Was the judgment of the court contrary to the law and the evidence? The record is undisputed that the Chelsea Gas Company received a conveyance of 30 acres of the land involved on the 26th day of September, 1906, and that it had ever since said date been in the free and uninterrupted possession of same. This allegation is not denied; it must be conceded that this company was in the open and adverse possession of this land, and had been for about two years prior to the 17th day of June, 1908, the date defendant in error took the deed of conveyance under which he asserts title, holding same adversely. The trial court erred in admitting said conveyance in evidence over objection of plaintiff in error the Chelsea Gas Company, and erred in rendering judgment against the Chelsea Gas Company and in favor of defendant in error, canceling the deeds of conveyance under which plaintiff in error Chelsea Gas Company claims title to said land. As to the Chelsea Gas Company, which was in adverse possession of said land on the date of the attempted conveyance of same to defendant in error, Byrd, as petitioner, was required to recover upon the strength of his title; and, his deed of conveyance being absolutely void as to the Chelsea Gas Company, he had no title upon which a judgment of a court in his favor could be based. Our statute, which has been several times construed, is declaratory of the common law. 4 Black. Comm. 136; 4 Kent's Com. 488. In 5 Amer. & Eng. Encyc. of Law, 844, the rule is stated as follows:

"It is generally held, in construing the various statutes, that a champertous agreement, at least as against the person whose interest might be affected thereby, is a nullity in law."

In *Huston v. Scott et al.,* 20 Okla. 142, 94 Pac. 512, 35 L. R. A. (N. S.) 721, in part, the second paragraph of the syllabus reads:

"A conveyance of land made in contravention of the provisions of section 2026, St. Okla. 1893, by the rightful owner, is utterly void as against the person holding adversely claiming to be the owner thereof under color of title."

This provision of the statute was again construed by this court in the case of *Miller v. Fryer,* 35 Okla. 145, 128 Pac. 713, where Chief Justice Hayes, speaking for the court, said:

"By reason of section 2215, Comp. Laws 1909 (Rev. Laws 1910, sec. 2260), a deed conveying real estate, executed by a grantor at a time when he was not in possession of the conveyed premises, is void as between the grantee and a person who was, at the time of the conveyance, in adverse possession of the conveyed premises; and this rule applies where the grantor is an allottee of the Chickasaw and Choctaw Tribes of Indians upon whose power to alienate his allotment the restrictions have been removed prior to the time of the execution of the deed, and where the person in possession originally obtained possession and claims title to the conveyed premises by virtue of a void deed executed by the allottee before the removal of restrictions upon his power to alienate his allotted lands."

See, also, *Ruby v. Nunn,* 37 Okla. 389, 132 Pac. 128.

If the deed of defendant in error was a nullity as to plaintiff in error Chelsea Gas Company, who was in possession—and from the foregoing authorities, we hold it to be such—he had no title which would have supported a default judgment; and while this question was not pleaded as a defense to the rights of the defendant in error to recover, yet plaintiffs in error alleged as a ground for a new trial and complain and urge as a ground of reversal that the judgment of the trial court is against the law and evidence. This statute, upon grounds of public policy, does not permit champertous contracts of this kind to be enforced. It is a general rule that where a contract is void as against public policy, or is void by force of a specific statute,

making it a penal offense to enter into such a contract, the parties asserting a right in court upon such contract have no standing; and, when it clearly appears to the court that plaintiff's cause of action is based upon a contract of this nature, the court on its own motion has the power to dismiss said cause. It is further held that such a contract would not support a default judgment, and the point is not waived by failure to demur. In the case of *Farris v. Henderson*, 1 Okla. 384, 33 Pac. 380, it is said:

"A complaint which states no cause of action will not support a judgment by default; and such judgment will be reversed in the appellate court. If the complaint states no cause of action, the objection is fatal at every stage of the proceedings."

Again, in the case of *Lewis et al. v. Clements*, 21 Okla. 167, 95 Pac. 769, it is said:

"A judgment by default, upon a complaint that does not contain allegations sufficient to constitute a cause of action, is void, and will be reversed on appeal."

In the last case, from which we have quoted, the cause of action was based upon a warranty deed, executed by an allottee whose restrictions upon alienation had not been removed. Judgment was recovered by default in the trial court, and this court reversed the judgment.

As to the ten acres of land claimed by plaintiff in error A. G. Phillips, the record does not show whether or not he was ever in possession of said land. Therefore we cannot say that the deed of defendant in error is void as to him.

From the foregoing views, we are of the opionion that the court committed prejudicial error in rendering judgment in favor of defendant in error, as against plaintiff in error the Chelsea Gas Company, canceling the deed of conveyance under which said company claims title to 30 acres of said land. The judgment of the trial court is reversed, in so far as it affects the rights of the Chelsea Gas Company, with direction to vacate the judgment in favor of · the defendant in error against the Chelsea Gas Company, and render judgment in favor of said gas company for the 30 acres of land claimed by it, cancel-

ing the deed held by defendant in error, Byrd, so far as it affects the 30 acres claimed by the Chelsea Gas Company, and so far as it affects three-fourths of the money on deposit with the clerk of the court. The costs of this appeal will be taxed equally against defendant in error and plaintiff in error A. G. Phillips, and that part of the judgment which affects the ten acres of land claimed by Phillips will be affirmed.

All the Justices concur, except KANE, C. J., who dissents on first proposition discussed, but concurs in the general conclusion reached.