GEORGE A. BUDLONG *et al. vs.* IDA M. BUDLONG, Admx.

FEBRUARY 24, 1927.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1) *Evidence. Pedigree Rule.*

A declaration by a person, now deceased, who lived with a family as a member of it, and as such was in a position to know about current talk therein concerning events regarded commonly as of importance in the family life, is admissible.

*(2)  Evidence.  Books.  Pedigree Rule.*

The mere fact that an entry in a book relates to pedigree, does not render the book admissible, without supporting evidence that the writer was related to the family of the one the entry relates to, or in a position to know the facts entered.

*(3)  Evidence.  Pedigree Rule.  Public Documents.*

The fact that a book is kept at a public institution, does not make it a public document, without supporting evidence that the book was made by a public officer or referred to or made use of by the public.

*(4)  Evidence.  Ancient Documents.*

Age alone does not establish verity of written statements.

The question in regard to ancient documents where pedigree is involved, is whether the circumstances are such as to vouch for the reliability of the entry.

*(5)  Evidence.  Ancient Documents.  Pedigree.*

The test in regard to ancient documents, which are private, is if the document is more than thirty years old, would the writer have been allowed to testify to the fact appearing in the writing.

*(6)  Evidence.  Books.  Pedigree Rule.  Ancient Documents.*

A book kept at a poor farm by an employee for the benefit of the town, and produced from proper custody and bearing on its face evidence of its ancient character and authenticity is not admissible as evidence of pedigree, without supporting evidence that the one making the entry had such information as would make his statement better than hearsay; and in the absence of anything indicating a duty to record births at the asylum.

Distinguishing *Ribas* v. *Revere Rubber Co.*, 37 R. I. 189.

*(7)  Probate Law.  Distribution.*

While the Supreme Court on exceptions does not have the power to affirm or reverse in part a decree of a probate court, such power does reside in the Superior Court and may be properly exercised where the distributive share to one branch of a family can not be affected by a decision as to the composition of another branch.

PROBATE APPEAL. Heard on exceptions of Mary E. Finnerty, an alleged heir, and exceptions sustained.

BARROWS, J. The Municipal Court of the City of Providence made an order of distribution to several branches of an intestate's family. One branch consisted of two brothers and a sister found to be heirs at law of George R. Budlong. After hearing on appeal the Superior Court reversed the decree so far as it found Mary E. Finnerty to be one of his lawful heirs.

The case is before us on her exceptions to that decision, which was based upon evidence claimed to have been erroneously admitted. She was the child of George R. Budlong. Her legitimacy was the issue. She knew nothing as to her mother's identity or time or place of marriage to her father.

In the course of the trial in opposition to the claim of legitimacy of Mary two books were offered only one of which for present purposes need be referred to. That one was entitled, "Register Warwick Asylum". It started in 1848 and entries continued to be made therein until 1896. It was produced by the matron of the Warwick Poor Farm, an employee of the Overseer of the Poor of the town of Warwick, who found the book four years ago in a desk in the office at the time she became associated with the work at the Poor Farm. There was no testimony showing by whom it was supposed to have been kept nor in whose handwritings it was. Examination of the book itself indicates age and different handwritings. The entries generally appear in chronological order. No other evidence indicates how regularly entries were made or that they were made contemporaneously with the events recorded. There was shown no duty of any employee at the Farm to keep this book, nor is there evidence of the entrant's sources of information of the facts entered therein. Some of them, such as the age of inmates, obviously must have been derived from sources other than the personal knowledge of the writer. The book purports to show names and ages of inmates, the time of admittance, by whose order sent to the Asylum, how employed while there, the time of death or discharge, the time supported. One column is for "remarks". The book was offered chiefly because of two entries, to wit: "July 1, 1861. Lucinda Millard age 20—returned—child born September 22, 1861," and under the column "Name of Inmate" "March 25, 1862, Mary E. Miller, age 6 mo." Mary E. Finnerty is claimed by the Budlongs to be the Mary E. Miller above mentioned and the child born to

Lucinda Millard. Over Mary's objection the book was admitted.

The exceptions pressed are 1 and 2 to the admission of statements alleged to have been made by Mrs. Budlong, Mary Finnerty's stepmother (now deceased), wife of George R. Budlong and mother of the Budlong brothers, that Mary was not their sister. The pedigree exception to the hearsay rule is well established. While in England and apparently in the Federal Courts it is limited to declarations by relatives, in many of the United States, and based upon what seems to us to be sound reasoning, a declaration by a person now deceased who lived with a family, as a member of it and as such was in a position to know about current talk therein concerning "events regarded commonly as of importance in the family life," is admissible. Wig. Ev. secs. 1486 to 1502. *Chapman* v. *Chapman*, 2 Conn. 347. The true test is whether declarant was sufficiently a member of the family circle to have personal knowledge of the family mention, discussion or tradition on the subject. In this instance Mary Finnerty from the age of three years was brought up as a daughter by the stepmother in her home and that of George R. Budlong. She was called and treated as the sister of the Budlong brothers and remained with them and her stepmother until she was about fourteen years old. Declarant, therefore, was in a position to know family tradition about Mary's pedigree. The evidence was properly admitted. *Alston* v. *Alston*, 114 Iowa 29.

Exceptions 3, 4 and 5 were taken to the admission of preliminary questions concerning the book to which we have above referred. As preliminary questions to bring out the nature of the book they were properly admitted.

Exceptions 6, 7 and 8 concern the testimony of Mr. George Sheffield relative to his recollection of the birth of a child referred to in the book above mentioned,—assuming what is not clear, that he referred to the child said to have been born in 1861. In the course of Sheffield's examination it had appeared that his knowledge of the date of birth of the

child was hearsay; that the mother and child were both at the Asylum when he went there. Objection was made to a portion of his testimony and when it appeared to be unsupported by personal knowledge a motion was made to strike it out. Witness was an aged man and not of keen mentality and though the record warranted the motion it was overruled because the judge was not certain that the understanding of Mr. Sheffield's testimony was correct. This was a proper exercise of discretion and further questions were asked. At the close of Mr. Sheffield's evidence the motion to strike out was not renewed but it is apparent from the record that the objection to his testimony had not been removed and that the matter escaped the attention of both court and counsel. The objectionable portion of Mr. Sheffield's testimony should have been stricken out.

The questions involved in exceptions 11 and 12 resulted in no harm to Mary Finnerty and need not be considered.

The vital question in this case arises under exception 13. It is whether the book was admissible to prove the date and fact of birth of a child to Lucinda Miller or Millard. It was admitted after much doubt as a record kept in the regular course of business. *Ribas* v. *Revere Rubber Co.*, 37 R. I. 189.

(2) Its admission also is supported before us on the ground that it is an ancient document relating to pedigree. The mere fact that the entry purports to relate to pedigree does not render it admissible. Without any evidence that the writer was related to Lucinda's family or in a position to know the facts entered no ground exists for admission under the pedigree exception to the hearsay rule. Wig. Ev. *supra*.

(3) Nor is the book a public document though kept at a public institution. Lord Blackburn in *Sturla* v. *Freccia*, House of Lords, 5 App. Cas. 623, at 643, says: "A public document means a document that is made for the purpose of the public making use of it and being able to refer to it." "It must be made by a public officer." In that case a report of a government official conveying private information to guide the discretion of the government in making an

appointment, which report stated the appointee's place
and time of birth, was held inadmissible to prove either.
In the case at bar there is no evidence that the book in
question was made by a public officer or referred to or made
use of by the public. *Fondi* v. *Boston Mutual Life Ins. Co.*,
224 Mass. 6; *Hegler* v. *Faulkner*, 153 U. S. at 117; *State* v.
*Woods*, 49 Kan. 237.

Neither does the ancient character of the writing render
the book admissible to prove the facts set down. Age alone
does not establish verity of written statements. The limits
(4) of the ancient document rule are not clearly defined and
the decisions applying it are not uniform. Chamberlayne
on Evid. Vol. 4, § 2952 sqq. Recitals in deeds more than
thirty years old generally have been held admissible to prove
certain of the facts recited. *Fulkerson* v. *Holmes*, 117
U. S. 389. Wig. Ev. sec. 1572. It is to be noted that the
identity of the person making the recital in a deed is known.
The ancient document rule where pedigree is involved
resolves itself into a question whether the circumstances
are such as to vouch for the reliability of the entry. Cham-
berlayne on Evid. *supra*. The rule arose from practical
necessity, but, as said by Thayer, Cases on Evidence, 1st
ed. 442: "It does not follow because a document does not
require the usual proof of due execution that it is admissible
in evidence. That would be like assuming that, because a
witness is competent to testify, whatever he may say is
(5) admissible." The test seems to us to be if the private
document is more than thirty years old, would the writer
if in court have been allowed to testify to the fact appearing
in the writing. In the case at bar a person unknown and
without any preliminary qualifications clearly would not
have been allowed to make a statement of the fact or date of
this birth without other evidence showing that his source of
information made his statement better than mere hearsay.
(6) Accepting the book as one kept at the Poor Farm by some
employee for the benefit of the town authorities and pro-
duced from proper custody and bearing on its face evidence

of its ancient character and authenticity, the circumstances
shown give no assurance of its reliability to prove the date
of birth of Mary E. Miller as the daughter of Lucinda
Millard.

The trial court felt compelled to admit the book under
the authority of the *Ribas* case. The admission of the
present book would go beyond the rule there adopted. In
that case the identity of the writer was known. The entry
was in the regular course of entrant's business and related
to facts which it was the writer's duty to record. Some
were observed by the writer, others were stated to him by
subordinates whose duty it was to observe and report the
facts. The record was written within three days of the
facts recorded. Here, we have nothing but the bare pro-
duction of a book found in the Asylum office. No one
knows who the writer was nor the sources of his informa-
tion. There is nothing to indicate a duty to record births
at the Asylum. Such recitals are incidental to those called
for by the book. As such they were rejected in *Hegler* v.
*Faulkner*, 153 U. S. 109. Nothing shows that the entries
were made contemporaneously with the facts recorded.
Some could not have been. As an example, the entry in
question concerning the return of Lucinda Millard and the
birth of a child appears under date of July 1, 1861. Ob-
viously the entry of birth September 22 could not have
been made under its purported date of July 1st. Nothing
in the record indicates where the birth took place or that
the facts set down were personally known to the writer.
One may surmise that the child was born at the Farm but
there was no evidence either within or without the book to
show it. The sole basis for admitting this book to prove
the birth of Mary Miller to Lucinda is its age and the place
here it was found. Too many inferences are required to
render it probative. *Viall* v. *Smith*, 6 R. I. 417; *Conn.
Mut. Life Ins. Co.* v. *Schwenk*, 94 U. S. 593 at 598; *Whitcher*
v. *McLaughlin*, 115 Mass. 167. It was error to admit the
book in evidence. As the other evidence was so nearly

balanced and great reliance was placed upon the book by the trial court, a new trial must be granted.

The appeal to the Superior Court suspended the operation of the order of distribution entered by the Municipal Court. G. L. 1923, Ch. 362, Sec. 11 (5410). As a result many distributees who had no interest in the question whether two or three persons ought to share in the allotment to the heirs of George R. Budlong were prevented from receiving their distributive shares. The administratrix has stated to this court that she is desirous of making payments to the other branches of the family and all persons before us were willing that she should do so. Without protection of a court order, however, it was made apparent that she could not make these payments with safety even with the consent of the litigants before us. While this court on exceptions does not possess the power to affirm or reverse in part the decree of the Municipal Court, such power does reside in the Superior Court. G. L. 1923, Ch. 362, Sec. 17 (5416). It may be properly exercised where the amount decreed to be payable to one branch of a family can not be affected by a decision as to the composition of another branch. It is not desirable that litigation between the members of a family which can affect only the members of that branch should operate to the detriment of those unaffected by the outcome of the litigation. If, therefore, on application of the administratrix it seems proper to the Superior Court to affirm the decree of the Municipal Court so far as it fixes the rights of those branches of the family not interested in the Budlong appeal we see nothing to prevent such action without awaiting the determination as to who may be the legal heirs of George R. Budlong.

Exceptions 6, 7, 8 and 13 are sustained, the others are overruled and the cause is remitted to the Superior Court for a new trial.

*Max Levy,* for appellants.

*Quinn, Kernan & Quinn, Michael De Ciantis,* for Mary E. Finnerty.