**JONAH et al. v. ARMSTRONG et al.**
**No. 420.**

Circuit Court of Appeals, Tenth Circuit.
Sept. 10, 1931.

William W. Pryor and John B. Campbell, both of Holdenville, Okl. (J. Ralph Knight, of Holdenville, Okl., Nathan A. Gibson, of Tulsa, Okl., and Jas. D. Simms, of Wewoka, Okl., on the brief), for appellants.

Warren T. Spies, of Bartlesville, Okl. (B. B. Blakeney and Hubert Ambrister, both of Oklahoma City, Okl., Charles E. Wells, of Shawnee, Okl., M. A. Dennis, of Okmulgee, Okl., G. J. Neuner and E. J. Lundy, both of Tulsa, Okl., H. E. Oakes, of Ponca City, Okl., F. M. Carter, of Bartlesville, Okl., R. J. Roberts, of Wewoka, Okl., Iris C. Saunders, of Shawnee, Okl., Edgar A. deMeules, of Tulsa, Okl., Blakeney & Ambrister, of Okla-

homa City, Okl., and Poe, Lundy & Morgan and Ramsey, deMeules, Martin & Logan, all of Tulsa, Okl., on the brief), for appellees.

Before LEWIS and COTTERAL, Circuit Judges, and POLLOCK, District Judge.

COTTERAL, Circuit Judge.

The appellants, twenty-four in number, of whom several were minors represented by guardians, brought this suit on November 21, 1927, against various individuals and oil companies. They alleged that they were enrolled Seminole citizens, and maternal cousins and sole heirs of Isaac Adams, an enrolled Seminole Indian, and inherited various fractional interests in 120 acres of land comprised in homestead and surplus allotments made in his name, after his death in 1900, as his distributive share of the Seminole Indian lands, evidenced by deeds of the nation, dated July 7, 1913, bearing the approval of the Secretary of the Interior; that there had been no administration of his estate or setting apart of the land to his heirs, and that he left no father, mother, brothers, sisters, wife, or issue capable of inheriting his estate; that the defendants are in possession of the land, unlawfully keep plaintiffs out of possession of and are collecting the rents and profits from the land. A decree was sought quieting their title and awarding them the possession of the land.

The defendants filed answers and cross-bills, admitting the allotments, alleging that they were made on the application of Louisa Smith, an enrolled Seminole of the half blood, denying the plaintiffs are cousins and heirs of the allottee, admitting he left no surviving parents, wife, brothers, or issue entitled to inherit his estate, but alleging he was survived by Louisa Smith, his sister, as his sole heir, and on his death she inherited the land as such heir. The defendants trace their title through her as a primary grantor by her deed to H. T. King, of date August 30, 1906, followed by deeds, grants, and mineral leases of her successors in interest. They also plead laches in bringing the suit and the bar of limitations.

Several other bills were filed based on like claims of title against the defendants. There were also interventions of other claimants. All of the cases were consolidated. After a trial, the District Court found all the issues against the plaintiffs and interveners and for the defendants, dismissed the several bills and interventions with prejudice, quieted the defendants' titles and interests, and enjoined the plaintiffs and interveners from asserting an adverse title to the land.

Only the plaintiffs have appealed to this court. In their assignments of error, they complain that the court erred in its findings of fact, the admission of evidence, and the application of the law to the facts.

The primary statute which controls the descent of these allotments is found in section 2 of the Supplemental Treaty with the Seminole Tribe, ratified on June 2, 1900 (31 Stat. 250), which reads as follows: "If any member of the Seminole tribe of Indians shall die after the thirty-first day of December, eighteen hundred and ninety-nine, the lands, money, and other property to which he would be entitled if living, shall descend to his heirs who are Seminole citizens, according to the laws of descent and distribution of the State of Arkansas, and be allotted and distributed to them accordingly: Provided, That in all cases where such property would descend to the parents under said laws the same shall first go to the mother instead of the father, and then to the brothers and sisters, and their heirs, instead of the father."

A decisive issue of fact which arose at the trial was whether Louisa Smith was a sister of the allottee, Isaac Adams by the same mother. This was because the plaintiffs concede that, if the fact was proved, then Louisa, being a Seminole and a qualified heir and the nearest of kin, inherited the allotments, and the defendants claiming title through her as their original grantor are entitled to prevail over the plaintiffs as more distant kin of the allottee. The plaintiffs, while admitting Isaac and Louisa had the same father, contend they had different mothers. The defendants claim they were children of the same mother.

The plaintiffs gave this account of their kinship with the allottee: Hepsey Perryman, a full-blood Creek, lived on Elk creek near Muskogee. About the year 1837, she bore a son named Tom Adams, whose father was Adam Stroyer, a negro. Heister, a Seminole woman who settled in the same locality, was the mother of a large family, one of whom was Nuthcup Harjo, a band chief. Hepsey married Joe Riley, a Seminole, and they had four children, Lucinda, Mesaira, Nellie, and Coody. About 1855, Tom Adams married a Seminole named Jannatta or Jennetta, and by this union Isaac Adams, the allottee, an only child, was born in 1856. After the battle of Honey Springs in 1863, Hepsey and Isaac became refugees at Ft.

Gibson. Heister and her family had previously located with the Seminoles in the Chickasaw Nation, and Louisa was among them. Heister was a maternal grandmother of Isaac Adams, his nearest ancestor who left children, and the plaintiffs are their descendants. Plaintiffs admit Tom Adams was the father of Isaac and Louisa. But they claim Louisa was an illegitimate daughter of Tom Adams and Cinda, the daughter of Hokte, a sister of Heister, and Louisa as such child could not inherit the allotments.

The defendants deny that Tom Adams' first wife was Jannatta, and claim that wife was Lucy, also known as Lucinda or Cindy, whom he selected from the Nutheup Harjo Seminole Band, when located on Elk creek; from that union both Isaac and Louisa were born, and Louisa, as a sister, was the sole heir to his allotments.

There was a conflict in the evidence on the issue. Several witnesses for the plaintiffs testified explicitly Jannatta was the mother of Isaac Adams and he was her only child. The plaintiffs' testimony was in instances unreasonable and even disclosed admissions that the defendants' claim is correct. The defendants called witnesses who testified Lucy was the mother of both Isaac and Louisa, and they saw the mother of Isaac nurse the child Louisa and care for both of them. Some of the defendants' testimony was also open to question.

There was other evidence. The census card of Louisa Smith, prepared by the Dawes Commission, produced as a document in custody of the superintendent of the Five Tribes, also shows that she belonged to the Nutheup Harjo Band, her father was Tom Adams and her mother Cindy, a dead Seminole of that band. The census card of Isaac Adams, a like document, shows him to be of the same band and names his father as Tom Adams, a Creek, and omits the name of the mother, but designates her as a dead member of the same band. Louisa was the only person to come forward and apply to the Dawes Commission for the allotments in Isaac's name, when she testified to her qualifications both as a Seminole and as his sister, and to her possession of the land. And her application had the approval of that Commission. It is significant the plaintiffs did not assert their claims to the allotments for so many years after Louisa Smith had secured them and as the sole owner transferred the title, and until they became specially valuable for the underlying mineral.

The controlling issue of fact was decided after the case had been tried and briefed and taken under advisement. It is a settled rule to which this court is committed that the findings of a chancellor should be approved in the absence of a serious mistake in considering the evidence. An additional reason for our agreement with the trial judge is that he was long a resident of Indian Territory and later had special judicial experience in estimating the testimony of witnesses in the controversies over Indian land titles. Harjo v. Empire Gas & Fuel Co., 28 F.(2d) 596 (8 C. C. A.); Youngblood v. Magnolia Petroleum Company, 35 F.(2d) 578 (10 C. C. A.). The findings made in this case are sustained by ample evidence and they are approved.

There was objection to the admission in evidence of the Indian tribal rolls as indicative of heirship. It was based on the rule that documents to be competent must have been required by law to be kept as official records, and it is contended that such foundation was not laid. Hegler v. Faulkner, 153 U. S. 109, 14 S. Ct. 779, 38 L. Ed. 653. Counsel for the defendants contend these rolls were given the status of official records and were rendered admissible by the Curtis Act, which provided that the Dawes Commission in making up the rolls were to have access to all rolls and records of the Five Tribes, and the courts were invested with jurisdiction to compel their delivery. Section 21, Act June 28, 1898, 30 Stat. 495, 502–504.

But we need not inquire whether the rolls were properly admitted. It does not appear that the trial court assigned weight to them. Presumably, they were disregarded. Unkle v. Wills (C. C. A.) 281 F. 29. It is our province to consider the evidence de novo on appeal. Anderson v. Hultberg (C. C. A.) 247 F. 273; Unkle v. Wills, supra. And our review of it apart from the rolls has resulted in an agreement with the findings of the trial court.

Counsel have argued other questions, based on the assumption that Louisa Smith was not a full sister of the allottee, but of the blood of his mother; and it is contended the laws of Arkansas as interpreted in the decisions and applied to that state of facts deny Louisa a preferred right to the inheritance and cast it on the plaintiffs. It is unnecessary, however, to explore the questions. They do not arise, because the assumption is untenable.

346

We conclude the decree of the District Court was for the right parties. It is therefore affirmed.