### NORTON et al. v. LARNEY.

(Circuit Court of Appeals, Eighth Circuit. April 25, 1923.)

No. 6164.

1. **Courts ☞280—Federal court must consider question of its jurisdiction.**

It is the duty of a federal court to consider the question of its own jurisdiction, whether raised by the parties or not.

2. **Courts ☞279—Jurisdiction of federal court must affirmatively appear from plaintiff's pleading.**

Jurisdiction of a federal court must affirmatively appear from facts set forth in plaintiff's pleading by distinct averment in the statement of his cause of action.

3. **Courts ☞284—Rights involved must depend on validity or construction of law of United States, to give federal court jurisdiction.**

It is not sufficient, to give a federal court jurisdiction, that title to land is claimed under a law of the United States, unless the suit really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such law, on the determination of which the result depends.

4. **Courts ☞279—Where jurisdiction is not questioned by pleadings, it is sufficient if shown in the proofs.**

Where the allegations of plaintiff's pleading are not sufficient to show jurisdiction of a federal court, but the question is raised for the first time in the appellate court, it is sufficient if jurisdiction appears from any part of the record, including the proofs.

5. **Indians ☞13—Matters concluded by decisions of Dawes Commission.**

The Dawes Commission was a special tribunal with judicial powers, and its judgments were conclusive, in the absence of fraud or gross mistake, or arbitrary action as to the questions it was authorized to decide, and also as to every issue of law and fact that it was necessary for it to determine in order to decide those questions; but its decisions and the recitals and reports contained therein, as to matters determination of which was not

indispensable to enable it to adjudicate who should be enrolled, what lands should be allotted to those enrolled, and how, are not of judicial or conclusive effect.

6. **Indians ⟨⟩13—Matters concluded by decision of Dawes Commission.**

Under Act March 3, 1905, authorizing the Commission to the Five Civilized Tribes to enroll and make allotments to children who were (1) born subsequent to May 25, 1901; and (2) prior to March 4, 1905; and (3) were living on said latter date; and (4) whose parents were citizens of the Creek Tribe, whose enrollment had been approved by the Secretary of the Interior prior to the date of the act, the decision of the Commission, granting enrollment to a child and making it an allotment, is a conclusive finding on the above questions of fact; but further recitals therein of nonessential facts, such as the exact age or sex of the child, or the enrollment names or numbers of its parents, are not conclusive of such matters.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit in equity by Cheparney Larney, a minor, by Bennie Green, his legal guardian, against L. B. Norton and others. Decree for complainant, and defendants appeal. Affirmed.

J. L. Hull, of Muskogee, Okl. (G. R. Horner, of Okmulgee, Okl., and N. A. Gibson and T. L. Gibson, both of Muskogee, Okl., on the brief), for appellants.

H. B. Reubelt, of Eufaula, Okl. (E. J. Van Court and Clark Nichols, both of Eufaula, Okl., on the brief), for appellee.

Before KENYON, Circuit Judge, and BOOTH and JOHNSON, District Judges.

BOOTH, District Judge. This is a suit to quiet title to certain land in appellee (plaintiff below), to cancel a deed of the land made by some of the defendants to the defendant Norton, and to enjoin defendants from asserting any claim against plaintiff to the land. Upon the trial decree was entered for plaintiff.

[1] In this court, for the first time, appellant challenges the jurisdiction of the court below. Nevertheless it is the duty of this court to consider the question of jurisdiction as in every case, and whether raised by the parties or not. C., B. & Q. R. R. Co. v. Willard, 220 U. S. 413, 31 Sup. Ct. 460, 55 L. Ed. 521; Louisville & Nashville R. R. v. Mottley, 211 U. S. 149, 29 Sup. Ct. 42, 53 L. Ed. 126; Garvin v. Kogler (C. C. A.) 272 Fed. 442. It is conceded that there is no diversity of citizenship between the parties, but jurisdiction is rested upon the ground that the suit is one arising under a law of the United States.

[2] The rules for pleading jurisdictional facts are well settled. The facts must be set forth in the plaintiff's complaint by distinct averment, and not by inference. They must be contained in a statement of the plaintiff's own cause of action, and not by way of anticipation of some defense. Shulthis v. McDougal, 225 U. S. 561, 32 Sup. Ct. 704, 56 L. Ed. 1205; Hull v. Burr, 234 U. S. 712, 34 Sup. Ct. 892, 58 L. Ed. 1557; Taylor v. Anderson, 234 U. S. 74, 34 Sup. Ct. 724, 58 L. Ed. 1218; Joy v. St. Louis, 201 U. S. 332, 26 Sup. Ct. 478, 50 L. Ed. 776.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[3] It is not sufficient that title to land is claimed under a law of the United States, unless the suit really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends. Joy v. St. Louis, supra; Shulthis v. McDougal, supra; Scott v. First National Bank (C. C. A.) 285 Fed. 832; Earnhart v. Switzler, 179 Fed. 832, 105 C. C. A. 260.

[4] Applying these rules to the complaint in the present case, we are of opinion that the averments were not sufficient to show jurisdiction. However, where the jurisdiction is not challenged by a pleading, but the question is raised for the first time in the appellate court, jurisdiction sufficiently appears if it is shown in any part of the record including the proofs. Robertson v. Cease, 97 U. S. 646, 648, 24 L. Ed. 1057; Sun Printing Ass'n v. Edwards, 194 U. S. 377, 382, 24 Sup. Ct. 696, 48 L. Ed. 1027; Horne v. Hammond Co., 155 U. S. 393, 15 Sup. Ct. 167, 39 L. Ed. 197; Doolan v. Carr, 125 U. S. 618, 8 Sup. Ct. 1228, 31 L. Ed. 844; Mahoning Valley Railway Co. v. O'Hara, 196 Fed. 945, 116 C. C. A. 495. From the pleadings and the proofs contained in the record in the present case, it clearly appears, and will be adverted to later, that plaintiff's claim is based upon one construction of the Act of March 3. 1905· (33 Stat. 1048), while defendant's claim is based upon a different construction of the same act. This made a federal question, and the court below had jurisdiction of the cause.

The land in question was an allotment pursuant to Act of Congress of March 1, 1901 (31 Stat. 861), made to a citizen of the Creek Tribe of Indians named in the deeds as Cheparney Larney. It is the claim of plaintiff that he is the person who was enrolled as a full-blood Indian on the Creek tribal rolls opposite roll No. 1287, and that he thereby became entitled to an allotment, and that he in fact received the allotment in question. It is the claim of defendants that the person who was enrolled was not the plaintiff, but a son of "Big Jack," one of the original defendants; that the son died about November, 1906, and that the defendants succeeded to the rights of said deceased son in the allotted land. A vital question in the case is therefore one of identity, and it involves the construction of the decision of the Commissioner to the Five Civilized Tribes granting and ordering the enrollment involved, and also of the statute under which the Commissioner was acting. The decision of the Commissioner is as follows:

"NO 1010.                                                        OCH CM.
"Department of the Interior,
"Commissioner to the Five Civilized Tribes.
"In the Matter of the Application for the Enrollment of Cheparney Larney as a Citizen by Blood of the Creek Nation.

"Decision.

"It appears from the records of this office that on April 24, 1905, testimony was offered 'in the matter of the application for the enrollment of certain new borns, as citizens of the Creek Nation,' which embraced a child of Jacob Larney (or Green) and Bettie Larney (or Green), which is herein considered as an original application for the enrollment of said person as a citizen by blood of the Creek Nation. Further·proceedings were had February 16, 1907.

"It appears from the testimony that about July 19, 1905, a Creek field party went to the home of said child for the purpose of obtaining information with

reference to the right to enrollment of said child, and that the parents refused to give such information, because of the influence over them of the Snake or disaffected faction of the Creeks; that the clerk in charge is under the impression that said child is a male, but states that he could not learn the name of said child. In view of the fact that the full name of said child could not be ascertained, and that it is believed that said child is a male, reference to said person will hereinafter be made under the name of Cheparney Larney, the Creek word 'Cheparney' signifying 'little boy.'

"The evidence and the records of this office show that said Cheparney Larney is the child of Jacob Larney and Bettie Larney, whose names appear as 'Big Jack' and 'Bettie' on a schedule of citizens by blood of the Creek Nation, approved by the Secretary of the Interior March 28, 1902, opposite Nos. 8291 and 8292, respectively. The evidence shows that about July 19, 1905, said Cheparney Larney appeared to be about one year old.

"Although the evidence herein is not as full and complete as has heretofore been required by this office to establish the right of a person to be enrolled as a citizen of the Creek Nation, in view of the provisions of the Act of Congress approved April 26, 1906 (34 Stat. 137), fixing March 4, 1907, as the date after which the Secretary of the Interior shall have no jurisdiction to approve the enrollment of any person as a citizen of said Nation, it is believed that the evidence herein should be considered sufficient to establish the facts necessary to enrollment.

"It is therefore ordered and adjudged that said Cheparney Larney is entitled to be enrolled as a citizen by blood of the Creek Nation, under the provisions of the Act of Congress approved March 3, 1905 (33 Stat. 1048), and the application for his enrollment as such is accordingly granted.

"Tams Bixby, Commissioner.

"Muskogee, Indian Territory, February 23, 1907."

It is undisputed that the allotment deeds to the land were delivered to the father of plaintiff, and that plaintiff has been in possession of the land since prior to the commencement of the present suit. The court below, holding that there was an ambiguity in the record, received evidence as to the identity of the person enrolled, and decided in favor of the plaintiff. It is the contention of appellants in this court:

(1) That the Commissioner's decision is conclusive evidence that the person enrolled was the child of "Big Jack" and Bettie, his wife.

(2) That if the decision of the Commissioner is not conclusive to that effect, yet that the weight of the evidence introduced upon the trial establishes the fact.

[5] 1. The Dawes Commission was a special tribunal having judicial powers. Its judgments were conclusive, in the absence of fraud or gross mistake, or arbitrary action, as to the questions it was authorized to decide, and also as to every issue of law and fact that it was necessary for it to determine in order to decide those questions. U. S. v. Wildcat, 244 U. S. 111, 37 Sup. Ct. 561, 61 L. Ed. 1024; Kimberlin v. Commission to Five Civilized Tribes, 104 Fed. 653, 44 C. C. A. 109; Malone v. Alderdice, 212 Fed. 668, 129 C. C. A. 204; Folk v. U. S., 233 Fed. 177, 147 C. C. A. 183; Nunn v. Hazelrigg, 216 Fed. 330, 132 C. C. A. 474; U. S. v. Atkins (C. C. A.) 268 Fed. 923. But the decisions of the Commission and the recitals and reports contained therein as to matters whose determination was not indispensable to enable it to adjudicate who should be enrolled, what lands should be allotted to those enrolled, and how, are not of judicial or conclusive effect. Malone v. Alderdice, supra; Porter v. U. S., 260 Fed. 1, 171 C. C. A. 37; U. S. v. Lena (C. C. A.) 261 Fed. 144. See also Hegler v. Faulkner, 153 U. S. 109, 117, 14 Sup. Ct. 779, 38 L. Ed. 653.

[6] Applying these principles to the case at bar, it is clear that the main question before the Commissioner to the Five Civilized Tribes for determination at the time he rendered the above decision was whether or not the applicant whose case he was considering was entitled to be enrolled under the Act of March 3, 1905. That act, so far as here material, provided:

"That the Commission to the Five Civilized Tribes is authorized for sixty days after the date of the approval of this act to receive and consider applications for enrollments of children born subsequent to May 25, 1901, and prior to March 4, 1905, and living on said latter date, to citizens of the Creek tribe of Indians whose enrollment has been approved by the Secretary of the Interior prior to the date of the approval of this act, and to enroll and make allotments to such children." 33 Stat. 1071.

It is apparent from the wording of the statute that the applicant to be entitled to enrollment, must have been (1) born subsequent to May 25, 1901; (2) born prior to March 4, 1905; (3) living on March 4, 1905; (4) born to citizens of the Creek Tribe whose enrollment had been approved by the Secretary of the Interior prior to March 3, 1905. The enrollment of the applicant, and especially when followed, as in the case at bar, by a certificate as to allotment and by allotment deeds or patents, would be conclusive that these four matters had been decided favorably to the applicant. Cases supra.

But any findings or recitals on matters other than these, for example, the exact age of the applicant, as in Malone v. Alderdice; or the exact names of the parents, as in Porter v. U. S.; or the marital relationship of the applicant, as in U. S. v. Lena—would not be of binding or conclusive effect, because they were not required to be found, either by the statute or as the necessary basis for the decision; and for like reason a finding as to the sex of the applicant, or as to the enrollment numbers of the parents of the applicant, or their aliases, would not be conclusive. Such matters might be stated as aids to identify the applicant, but mistakes in such statements would not affect the validity of the patent, nor prevent the applicant from proving his identity. The two classes of findings must not be confused.

In the decision of the Commissioner there is a recital that the applicant was a child of Jacob Larney (or Green) and Bettie Larney (or Green). There is also a finding that, about July 19, 1905, the applicant appeared to be about one year old. This was equivalent to findings that the applicant was born subsequent to May 25, 1901, but prior to March 4, 1905, and was living on the latter date. The finding upon which appellants rely is this:

"The evidence and the records of this office show that said Cheparney Larney is the child of Jacob Larney and Bettie Larney, whose names appear as 'Big Jack' and 'Bettie' on a schedule of citizens by blood of the Creek Nation, approved by the Secretary of the Interior March 28, 1902, opposite Nos. 8291 and 8292, respectively."

The only material fact here found was that the enrollment of the child's parents, already recited as Jacob Larney and Bettie Larney, as citizens of the Creek Tribe, had been approved by the Secretary of the Interior prior to March 3, 1905. This fact was a matter of record with the Commissioner, and this record evidence introduced at the

present trial showed that their enrollment was approved by the Secretary of the Interior on March 28, 1902, as the finding alleges. The recital to the effect that Jacob Larney and wife were identical with "Big Jack," and wife, and the recital of the roll numbers, were unnecessary and of no binding effect. Suppose that there had been an actual pending controversy whether the child whose application was being considered was the child of Jacob Larney and wife, or of "Big Jack" and wife. It is clear, since the enrollment of all of these four people had been approved by the Secretary of the Interior prior to March 3, 1905, as shown by the records in evidence, that the Commissioner would not have been called upon to decide the dispute as to parentage, and, if he had decided it, the decision would not be binding. The only finding that was material for the Commissioner to make was that the enrollment of the parents, whoever they were, being citizens of the Creek Tribe, had been approved by the Secretary of the Interior prior to March 3, 1905.

Omitting from this finding the surplusage as to the aliases of Jacob Larney and wife and the numbers of the enrollment, the essential part remains that they were citizens of the Creek Tribe, and that their enrollment had been approved by the Secretary of the Interior, on March 28, 1902. The cases relied upon by appellants and cited above, as to the conclusive effect of findings by the Commissioner, are in harmony with these views. They all hold that findings which are necessary to the adjudication are conclusive. But they also clearly hold that findings which are not necessary to the adjudication are not conclusive.

Appellants themselves abandon the theory that this finding upon which they rely is conclusive in its entirety. Their whole case depends upon a rejection of that part of the finding relating to the identity of Jacob Larney and wife with "Big Jack" and wife. The decision of the Commissioner in our opinion was ambiguous as to the identity of the applicant, and extrinsic evidence was admissible to prove it.

2. The evidence, extrinsic of the decision of the Commissioner, as to the identity of the plaintiff with the applicant who was actually enrolled, is to our minds clear and convincing. The testimony of Posey that the child whom he reported for enrollment was the child of Jacob Larney and wife, found by him at their house; the evidence that this report and Posey's testimony were the basis of the application for the enrollment actually made; that the parents of the child whom Posey reported were unwilling to give the child's name, owing to the antagonistic attitude of the maternal grandfather, and that the Commissioner, being unable to find out the real name of the child, named it "Cheparney Larney"; that the three sons of "Big Jack" were all accounted for on the records of the Commission, two of them having been enrolled and one rejected; that Posey did not visit the house of "Big Jack" and report his children, but such report was made by a different agent; that Jacob Larney, whose boy Posey reported was of Arbeka Tulledge town, and his wife of Hillabee town, and that the record evidence shows such to be the facts as to plaintiff's father and mother, but not to be the facts as to "Big Jack" and his wife; that the government officials in July, 1907, notified Jacob Larney of the en-

rollment of his son, and requested him to make a selection of lands; that the government officials again, in May, 1908, notified Jacob Larney of an arbitrary allotment of lands to his son, which is the allotment here in controversy; that the deeds to the allotment were delivered to Jacob Larney for his son, the present plaintiff, and that possession of the lands was taken on behalf of the plaintiff, and that no claim to the land was made by "Big Jack" for years—all establishes clearly that the applicant before the Commissioner was the present plaintiff, the child of Jacob Larney and wife, that he was the person enrolled, and that this was so understood by the Commissioner.

The testimony on behalf of the defendants, that the son (now dead) of "Big Jack" was commonly called in his neighborhood Cheparney Larney, corroborates rather than weakens the above conclusion, because the Commissioner would not have been likely to state in his decision that the name of the boy whose application he was considering could not be ascertained, if in fact he was considering the case of "Big Jack's" boy, whose name was well known. We are of opinion that the evidence clearly identified the plaintiff as the person enrolled by the Commissioner and entitled to the allotment of the land in controversy.

Judgment affirmed.