## COWE v. WHITE et al.

No. 15988—Opinion Filed July 6, 1926.

Rehearing Denied Dec. 14. 1926.

### 1. Indians—Conclusiveness of Decisions by Dawes Commission Within Jurisdiction.

The Dawes Commission was a special tribunal with judicial powers, and its judgments were conclusive, in the absence of fraud, or gross mistake. or arbitrary action as to the questions it was authorized to decide. and also as to every issue of law and fact that it was necessary for it to determine in order to decide those questions; but its decisions and the recitals and reports contained therein, as to matters the determination of which was not indispensable to enable it to adjudicate the matters involved, are not of conclusive effect.

### 2. Judgment not Sustained.

Record examined; held. to be insufficient

to support judgment in favor of the defendants.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Okfuskee County: John L. Norman, Judge.

Action by Sarty Cowe against John W. White et al. Judgment for defendants, and plaintiff brings error. Reversed.

E. C. Hooper, Jr., for plaintiff in error.

Phillips, Douglass & Duling. for defendants in error John W. White and Myrtle White.

J. C. Wright and Martin L. Frerichs, for defendant in error T. W. Patterson.

T. J Flannelly, Paul B. Mason, J. C. Wright, and Martin L. Frerichs, for defendant in error Prairie Oil & Gas Company.

Opinion by STEPHENSON, C. Sarty Cowe commenced his action against the defendants in ejectment for an undivided one-half interest in and to the lands described in the petition. The plaintiff alleged that the lands were allotted to Johnson Riley, a full-blood Creek Indian, who died in the latter part of the year 1902, or the early part of the year 1903. The plaintiff further alleged that the allottee left as his next of kin and heirs at law a paternal half-brother. who is the plaintiff, and Sar-Yo-Ki-Che, mother. The defendants claimed ownership of the fee simple title to the property, and deraigned their title to the property through and from a deed of the mother, dated in 1909, and duly approved by the proper county court. The defendants further alleged that the lands were selected and allotted to the heirs of Johnson Riley, deceased, on June 30, 1902. according to section 28 of the Original Creek Treaty. The part of the section involved in this appeal reads as follows:

"If any such citizen died since that time, or may hereafter die, before receiving his allotment of lands, and distributive share of all funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs according to the law of descent and distribution of the Creek Nation. and be allotted and distributed to them accordingly."

The defendants further set forth in their answer that the question as to whether Johnson Riley was living or dead at the time of the selection of the lands was material under the allotment provisions applying to the citizens of the Creek Nation: that it was necessary to determine whether the party was living or dead in order to determine the proper form of patent. The answer further set forth that the Dawes Commission found that Johnson Riley was dead on the date that the selection was made, and that the lands were selected on behalf of the heirs of the decedent, and patent issued conveying the lands involved in this action to the heirs of Johnson Riley, deceased.

The plaintiff did not attack the finding of the Commission in respect to the death of Johnson Riley at the time the lands were selected. The plaintiff offered testimony to prove that the decedent died in the latter part of 1902, which was objected to on the part of the defendants and sustained by the court. Judgment followed for the defendants, and the plaintiff has appealed the cause here for review.

The plaintiff submits the single proposition that the question of the death of Johnson Riley was not a question of fact involved in making the selection and allotment of the lands involved in this suit. Section 28 of the Act of March 1, 1901, provides that all citizens of the Creek Nation, who were living on the 1st day of April, 1899, should be entitled to be enrolled under section 21 of the Act of Congress approved June 28, 1898. Then followed the language first quoted herein, relating to the allotment of lands in relation to citizens who died after the 1st day of April, 1899. Section 7 of the Act approved March 1, 1901. Original Creek Treaty (31 Stat. L. 861), provides, among other things, that a homestead should be selected out of the allotment of living allottees, and provides certain other conditions in relation to the allotments made to living citizens. The land selected for the living citizens was patented to the allottee, and certain of the lands so allotted designated as a homestead. Section 28 of the Original Creek Treaty, which was first quoted herein, provides that if the citizen who was living on the 1st day of April, 1899, should die before the selection of his allotment, the distributive share of lands and money to which he would have been entitled, if living, should descend to his heirs according to the law of descent and distribution. The same section further provided that such distributive share of land should be allotted to and be distributed to his heirs. Under the provisions of said section 28, the heirs of a deceased citizen were entitled to have the distributive share of the decedent allotted to them. In such cases the section required the lands to be patented to the heirs of the decedent. Therefore it was necessary for the Dawes Commission, under the allotment acts relating to the enrollment and allotment of lands to Creek

citizens, to determine whether the enrolled citizen was living or dead at the time of the selection of the land. The land involved in this action was selected on behalf of the heirs of Johnson Riley on June 30, 1902. The lands were patented to the heirs of the decedent in compliance with the provisions of section 28, supra.

The enrollment and allotment acts affecting Creek citizens imposed upon the Dawes Commission the duty of ascertaining whether such citizen was living or dead at the time of the selection of his distributive share of land. This duty so imposed upon the Dawes Commission required that body to make an investigation of facts pertaining to the question. It required a decision or judgment by the Commission upon this question, in order to determine the form of conveyance which should be used in passing title to the lands selected for the citizen. The certificate of selection, and the wording of the patent affecting the lands involved in this action, show that the Dawes Commission considered the question as to whether Johnson Riley was living, and reached a judgment upon the question to the effect that he was dead at the time the lands were selected on June 30, 1902.

The main questions which concerned the Dawes Commission were: (a) Whether the allottee was living on April 1, 1899; (b) the right of the allottee to be enrolled, and his enrollment; (c) whether the allottee was living or dead at the time of the selection of the allotment. Neither the date of the death of the allottee, nor who were his heirs, were questions involved in the course of making the selection and allotment of the land. It was sufficient that the person was duly enrolled, and had died before the selection of the allotment was made.

The Dawes Commission was not concerned with the questions: (a) When the allottee died; or (b) who his heirs were. If the allottee was dead at the time the selection was made, it was the duty of the Dawes Commission to patent the land to the heirs of the decedent. Who were the heirs and entitled to the possession of the allotment, was a judicial question to be determined by a court of competent jurisdiction. It was the right of each and all of the claimants to have their day in court to try their claims to the property. It is true that the date of the allottee's death would be material, but this question enters into the determination of the question as to who were the heirs of the decedent. The defendants in error submit the proposition that the Commission

found that the allottee was dead on June 30, 1902, at the time the selection of the allotment was made, and that the finding as to the date of the death was binding.

The rule that the findings and judgment of the Dawes Commission are conclusive on material questions, follows from the fact that the Commission exercised quasi judicial powers in the determination of the question, but this rule cannot be given broader effecc than would apply to the judgment of a court of general jurisdiction.

The judgment of a court of general jurisdiction is binding on the parties and those claiming the fruits of the judgment. The rule would not make the finding of the Commission, that the allottee was dead on June 30, 1902, binding on the plaintiff in error. The plaintiff in error should be given his day in court to try his claim to the property according to the rules of legal jurisprudence. A similar question was before the Eighth Circuit Court of Appeals in the case of Norton et al. v. Larney, 289 Fed. 395, wherein the court considered the effect of the findings and judgment of the Dawes Commission and disposed of the questions in the following language:

"It is apparent from the wording of the statutes that the applicant, to be entitled to enrollment, must have been (1) born subsequent to May 25, 1901; (2) born prior to March 4, 1905; (3) living on March 4, 1905; (4) born to citizens of the Creek Tribe whose enrollment had been approved by the Secretary of the Interior prior to March 3, 1905. The enrollment of the applicant, and especially when followed, as in the case at bar, by a certificate as to allotment and by allotment deeds or patent, would be conclusive that these four matters had been decided favorably to the applicant. Cases supra.

"But any findings or recitals on matters other than these, for example, the exact age of the applicant, as in Malone v. Alderdice; or the exact name of the parents, as in Porter v. U. S.: or the marital relationship of the applicant, as in U. S. v. Lena—would not be of binding or conclusive effect, because they were not required to be found, either by the statute or as the necessary basis for the decision; and for like reason a finding as to the sex of the applicant, or as to the enrollment numbers of the parents of the applicant, or their aliases, would not be conclusive. Such matters might be stated as aids to identify the applicant, but mistakes in such statements would not affect the validity of the patent, nor prevent the applicant from proving his identity. The two classes of findings must not be confused."

The court discussed the effect of a certain recital in the findings of the Commission

similar to the findings herein involved, and in respect thereto, said:

"The recital to the effect that Jacob Larney and wife were identical with 'Big Jack' and wife, and the recital of the roll numbers, were unnecessary and of no binding effect. Suppose that there had been an actual pending controversy whether the child whose application was being considered was the child of Jacob Larney and wife, or of 'Big Jack' and wife. It is clear, since the enrollment of all these four people had been approved by the Secretary of the Interior prior to March 3, 1905, as shown by the records in evidence, that the Commissioner would not have been called upon to decide the dispute as to parentage, and if he had decided it, the decision would not be binding. The only finding that was material for the Commissioner to make was that the enrollment of the parents, whoever they were, being citizens of the Creek Tribe, had been approved by the Secretary of the Interior, prior to March 3 1905."

The above case was appealed to the Supreme Court of the United States in the style of Norton v. Larney, and reported in 266 U. S. 511, 69 L. Ed. 413. It was said by the Supreme Court on the question:

"Recitals in respect to such matters, or of other merely identifying circumstances, such as the exact age of the child, its sex, etc. (Heglar v. Faulkner, 153 U. S. 109, 117, 118, 38 L. Ed. 653, 655. 656, 14 Sup. Ct. Rep. 779; Malone v. Alderdice, 129 C. C. A. 204, 212 Fed. 668; United States v. Lena, 261 Fed. 144, 149, 150; Porter v. U. S., 171 C. C. A. 37, 260, Fed. 1, 4) are not conclusive in subsequent proceedings about the same subject-matter. The principle of res judicata does not apply to points which come under consideration only collaterally or incidentally. Duchess of Kingston's Case, 2 Smith, Lead. Cas. 7th Am. Ed. Hare and W. 609, 610 (573); Hopkins v. Lee, 6 Wheat. 109, 114. 5 L. Ed. 218, 220; Campbell v. Consalus, 25 N. Y. 613, 616, 617; People ex rel. Reilly v. Johnson, 38 N. Y. 63, 64, 66, 97 Am. Dec. 770. But, apart from these considerations, parol evidence was admissible to resolve the latent ambiguity disclosed by the record, arising from the use of names and aliases as though belonging to the same persons, but, in fact, belonging to different persons."

The opinion of both courts make it apparent that the findings of the Commission relied on by the defendants in error, are excluded from the rules contended for by the latter. Mullins et al. v. U. S., 224 U. S. 455, 55 L. Ed. 834; Reed v. Welty, 197 Fed. 419; Skelton v. Dill, 235 U. S. 206, 59 L. Ed. 198; Malone v. Alderdice, 212 Fed. 668; U. S. v. Wildcat, 244 U. S. 111, 61 L. Ed. 1024.

If the proposition urged by the defendants in error were sound, they might with equal force urge that a finding by the Commission that an allottee was a minor, bound all parties notwithstanding the enrollment record, which is made conclusive as to the age of a minor, showed the contrary. The Dawes Commission was required to appoint guardians to make selections of allotments for minors, but this does not mean that the finding of a given age, at some given time, would preclude the trial of the question, and deny the effect of the congressional act in relation to making enrollment records conclusive proof of age, where the records disclose the age.

The trial court committed reversible error in refusing to permit the plaintiff to introduce his evidence as to the date of the death of the allottee.

The cause is reversed and remanded for further proceedings in accordance with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 34 C. J. p. 879 §1287; p. 929 §1333.    (2) 4 C. J. p. 1165 §3185.