## FIXICO v. CHAPMAN.

No. 17659. Opinion Filed Jan. 14, 1930.

J. B. Campbell and Pryor & Stokes, for plaintiff in error.

John Rogers and Orr & Woodford, for defendant in error.

RILEY, J. The plaintiff in error, as plaintiff below, sought to be adjudged the owner of an undivided one-fourth interest in lands situated in Hughes county and described as the south half of the northeast quarter of section 25, township 8 north, range 8 east.

The described lands constituted the allotment of Cozar Fixico. The plaintiff alleged that the defendant was in possession of the lands in controversy and had derived his title from Maley Fixico, John Davis, and Nupsey Fixico, widow, son and daughter respectively of Cozar Fixico. The plaintiff alleged that he was the son of Cozar Fixico and Pagee, and as such heir, under the law applicable, was entitled to an undivided one-fourth interest in said lands.

The defendant by answer admitted that Cozar was enrolled as a Creek citizen and that the described lands were allotted to him. Defendant admitted possession and denied that plaintiff was entitled to any part of the land; he alleged that his right to possession was based upon valid and legal conveyances from the heirs of Cozar Fixico, deceased.

On the trial of the cause it was stipulated by the parties that Cozar Fixico was enrolled as a full-blood Creek Indian opposite No. 5216; that he died on March 2, 1922; that the Creek law governed the descent of his allotment; that he left surviving him Maley Fixico, his wife, John Davis, a son, and Nupsey Fixico, a daughter. That the defendant had acquired deeds from Maley Fixico, John Davis, and Nupsey Fixico. That the only issue for the court to try was whether or not Amon Fixico, the plaintiff, was a son by blood of Cozar Fixico, and by reason thereof entitled to inherit.

Upon submission of the cause to the trial court the issues were found in favor of defendant. Judgment was rendered accordingly. Upon appeal the plaintiff in error presents but one assignment, that is that the judgment is not supported by the evidence and the law. In other words, the question before the trial court and the question presented upon appeal is, Was Cozar Fixico the father of plaintiff?

Plaintiff in error contends, first, that Cozar Fixico and Pagee were man and wife; and, second, that Amon Fixico was the child of Cozar Fixico and Pagee, and if Cozar and Pagee were not married, Cozar Fixico legitimated Amon; third, that the descriptive matter contained in the enrollment record of plaintiff is conclusive.

The trial court made findings of fact and conclusions of law which, in part, are as follows:

"The plaintiff claims title to said land by reason of his relation to Cozar Fixico, a Creek Indian, duly enrolled as such, and that the said Cozar Fixico was the putative father of plaintiff, having been born out of

lawful wedlock, and after birth and according to the Creek laws Cozar Fixico acknowledged this plaintiff as his child, and by reason of this legitimation plaintiff claims that he is entitled to inherit his proportionate part of his putative father's land with the other heirs.

"The defendant denies that Amon Fixico was the illegitimate son of Cozar Fixico, or that he was ever acknowledged to be such by Cozar Fixico, but claims that Amon Fixico was the legitimate child of Paygee, the mother, and Neotochee, the father, who was an Indian preacher, and lived with Paygee as her husband when plaintiff was born.

"The only question of fact for this court to decide is what relation was Amon Fixico, the plaintiff, to Cozar Fixico, the allottee of the land in controversy."

Testimony is quoted as follows:

"Amon Fixico: Testified in substance that he was the son of Cozar Fixico; that his allotment was near that of Cozar Fixico; that he was about 18 years of age when Cozar Fixico died; that if he ever had any brothers and sisters he did not know their names, and if any existed, they died before he was born or too young to remember; that he lived with Cozar Fixico from early childhood until Cozar Fixico died, and was living in his home at the time of his death; that Amon Fixico was about 18 years old when Cozar Fixico died and is now 41 or 42 years old. He also testified that Paygee was his mother.

"Eliza Davis: Testified that she was about 75 years old; knew Cozar Fixico; knew Paygee and Wisey; Wisey being the wife of Cozar Fixico before he married Maley; that Amon Fixico was a son of Paygee, and Cozar Fixico was his father; that she lived with Paygee a short time and knew that Amon was Paygee's child and that Cozar Fixico lived with Paygee as his second wife; that Paygee had three other children, but they died before Amon was born. This testimony is somewhat faulty on account of her memory, as the other testimony shows conclusively that the other three children, namely, Louie, Charley and Lizzie did not die until long after Amon was born. Eliza Davis further testified that when she went to live with Paygee that Cozar Fixico was living with Wisey as his wife; that when she went to live with Paygee that Amon was living at Paygee's house, a small boy, just learning to walk.

"Jim White: Testified he knew Cozar Fixico in his lifetime and knew Amon; that Paygee was the mother of Amon and Cozar Fixico was his father, and that Cozar Fixico was married to Wisey, but lived with Paygee as his second wife.

"Bunnie McCosar: Testified that he was about 60 or 61 years of age; that he knew Cozar Fixico in his lifetime and that Amon Fixico lived with him, and that Cozar Fixico told him that Amon was his son.

"N. F. Jacobs: Testified that he knew Amon Fixico, but did not know where he lived before Cozar Fixico died.

"This is all of the oral testimony introduced upon the part of plaintiff.

"The defendant introduced in support of his defense the following testimony, to wit:

"Canugy Lowe: Testified that he was about 50 years old; lived in Holdenville, and that Cozar Fixico lived six or seven miles north of Holdenville; that during the lifetime of Cozar Fixico he lived a neighbor to him and he knew Amon Fixico, and that Amon Fixico lived in the home of Cozar Fixico; that Paygee was the mother of Amon and that Paygee had three other children, viz., Louie, Charley, and Lizzie; that before Amon Fixico was born, Wisey, the sister of Paygee, was Cozar Fixico's wife, and that Wisey and Cozar Fixico had four children, viz., John Davis, Hotke, Martha and Nupsey, and that Cozar Fixico told him that he was not the father of Amon Fixico.

"Jackson Davis: Testified that he was 33 years old; that John Davis was his father and Cozar Fixico was his grandfather; that John Davis told him that Amon Fixico was not the son of Cozar Fixico, and that John Davis is now dead.

"Liley Harjo: Testified that he was 45 years old and lived near Cozar Fixico before he died; that he knew Amon Fixico and Paygee, his mother; that at the time Cozar Fixico made application for the allotment of himself, he told Jim Lynch in my presence that Amon Fixico was not his child, but he was going to say as much in order to get him allotted and make selection of his land; that Paygee had three other children besides Amon, viz., Charley, Louie, and Lizzie.

"Timmie McGeeley: Testified that he was 42 years old; was minister of the gospel of the Methodist faith and a farmer by occupation; that on the 16th day of January, 1926, in Holdenville, Oklahoma, in the bank, that he had a conversation with Amon Fixico in which Amon told him in substance that he was not the son of Cozar Fixico, but the Dawes Commission records said he was, and that he was going to get part of the land allotted to Cozar Fixico.

"Wisey Deere: Testified that she knew Amon Fixico, and that Paygee was the mother of Amon Fixico and Neotochee was his father; that Paygee and Neotochee had three other children, viz., Louie, Charley, and Lizzie; that she did not know whether Paygee and Neotochee lived together as husband and wife when Amon was born.

"Jackson Yahola: Testified that he knew

Cozar Fixico; that in the early childhood of Amon Fixico he was called Emma Nead; that he knew Louis, Charley, and Lizzie, brothers and sister of Amon; that he visited in the home of Cozar Fixico and that Amon called Cozar Fixico uncle; that Cozar Fixico called Amon his step-son; that Paygee's brother moved Paygee to Cozar Fixico's old place.

"John A. Jacobs: Testified that he was 54 years old, was born near Holdenville and lived there all of his life; that he held the office of King of the House and belonged to the House of Warriors; that he was a Creek citizen and that John Davis told him that Amon was his cousin.

"Mikey Jones: Testified that he was 67 years old, or more, and knew Neotochee, the father of Amon, and knew Paygee, the mother of Amon; that the father of Amon was a preacher and lived north of the North Canadian river; that Neotochee and Paygee married and lived together as husband and wife with an old couple; that during their married life they had four children, viz., Louis, Charley, Lizzie, and Amon; that he knew of them living at old man Harjo's place ten years or more; that Amon was born before Neotochee died; that when Neotochee died Paygee moved down to Cozar's place; that Paygee was the sister-in-law of Cozar Fixico.

"Maley Jones: Testified that she was the wife of Cozar Fixico after Wisey, the former wife of Cozar, died; that Wisey, the first wife of Cozar Fixico, was the sister of Paygee; that 'Amon Fixico came to my home when I was with Cozar as his wife and lived there until Cozar's death'; that Amon's mother had abandoned him and 'my husband sent John Davis after Amon, together with another child, and they lived in our home'; Cozar Fixico did not recognize Amon as his child, and that Paygee was the mother of Amon and Neotochee was his father; 'the family of Cozar Fixico are no relation so far as I know,' never considered him the father of Cozar Fixico. That on the 5th day of April, 1913, 'I made an affidavit before J. H. Alexander as notary public, setting out the relationship and giving the parentage of Amon Fixico.' "

This was all of the oral testimony introduced on behalf of defendant.

"Record Evidence.

"On the 13th day of February, 1900, Cozar Fixico appeared before the Dawes Commission and made application for allotment of himself, Maley Fixico, Emma Fixico and Nupsey Fixico, and stated in said application, as shown by Exhibit 'B', that Emma Fixico, which plaintiff claims was an error, was his daughter; that this was a mistake of fact, and that the entire record of the Dawes Commission shows that 'Emma Fixico' was intended as 'Amon Fixico,' but dif-

ferent names and different sex; that in order to prove this mistake of fact and to have the name of 'Emma Fixico' changed to 'Amon Fixico,' the plaintiff introduced the affidavits of Amon Fixico, John Davis, Phillip Marshall, Jim Davis, and Maley Jones, nee Fixico; that after these five affidavits were executed and sent to the Dawes Commission and after the death of Cozar Fixico, the application for allotment made by Cozar Fixico was changed by the Commission to read 'Amon Fixico (instead of Emma Fixico)'; that had it not been for these affidavits, Amon Fixico would never have been recognized by the Commission or received his allotment as a Creek citizen; that the affidavits made by these parties fully disclosed the identity of Amon Fixico and his parentage, and that Amon Fixico in his affidavit recognized that he was not the son of Cozar Fixico."

"Finding of Facts.

"By the evidence introduced by the respective parties the court finds:

"That Amon Fixico is the son of Neotochee and Paygee; that Neotochee was his father and Paygee was his mother; that Cozar Fixico was not his putative father, and did not recognize Amon Fixico as his son; that Wisey Fixico, the wife of Cozar Fixico, was the sister of Paygee and the aunt of Amon, and by reason of this relationship Amon Fixico was taken into the home of Cozar Fixico.

"That not a single relative, male or female, ever recognized Amon Fixico as being the son of Cozar Fixico, but instead, all recognized him as being the son of Neotochee and Paygee and treated him as such."

The conclusions of law of the trial court based upon the above findings are as follows:

"The court therefore concludes that, inasmuch as the Creek law was in force at the date of the death of Cozar Fixico, that the nearest relative inherit, and that Maley Jones, nee Fixico, the wife of Cozar Fixico, John Davis, a son, Nupsey Fixico, a daughter, inherited the entire estate of Cozar Fixico and have conveyed their interest to the defendant, John O. Chapman, who is the owner thereof and in possession of same, and that a decree and judgment will be entered in accordance with these findings of facts and conclusions of law herein set out, and that the plaintiff will be given an exception to the finding of facts and conclusions of law herein found and stated."

In accord with the findings of fact and conclusions of law heretofore set out, the trial court rendered judgment in which he found that Neotochee was the father and Paygee was the mother of plaintiff, Amon Fixico; that the plaintiff inherited no right, title, or interest in the lands in controversy;

that the defendant, Chapman, was the owner and in possession of said lands and that his title thereto be quieted as against the plaintiff.

We have reviewed the evidence adduced, and it is our conclusion that the same amply supports the judgment as rendered, provided that the descriptive matter contained in the enrollment record of Emma Fixico (Amon Fixico) is not conclusive.

Plaintiff in error contends that the information contained in the enrollment record of plaintiff with reference to parentage, sex, etc., is conclusive and cannot be overcome by other evidence. In other words, he contends that, inasmuch as the enrollment records show that Emma Fixico is a daughter of Cozar Fixico, we must conclude as a matter of law that Amon Fixico was a son of Cozar Fixico, and that the trial court was in error in admitting otherwise competent evidence which showed that Amon Fixico was not the son of Cozar Fixico.

We do not agree with this contention.

Plaintiff relies upon the case of Page v. Atkins, 86 Okla. 290, 208 Pac. 807, and Halsell v. Beartail, 107 Okla. 103, 227 Pac. 392.

It is our view that those cases are not squarely in point, that they are not decisive; however, not contrary to the issue as presented in the case at bar. In the Atkins Case the question before the court was one of identity. There were several Thomas Atkinses who were there seeking the allotment, whereas in the case at bar there is no question as to the identity of Amon Fixico. The question decisive of the issue here is that of parentage. However, the Atkins Case recognizes that descriptive matter such as sex, age, and parentage may be in error, and as recorded such evidence is entitled to great weight, yet such matters of description may be overcome by strong and convincing evidence to the contrary. We quote from the Atkins Case:

"* * * The information furnished on this card, such as the sex, age, and parentage of the citizen, is descriptive matter, and there may appear an error as to one or more of these descriptive words which would not destroy the identity of the citizen. But, considering the fact that these descriptive words are placed upon this record pursuant to a statutory duty as a matter of evidence, they are entitled to great weight, and cannot and will not be discredited or ignored in the absence of strong and convincing evidence to the contrary. In determining the identity of a citizen from the enrollment record it is the duty of the court to consider the entire record."

The Beartail Case involved the identity of Nocus Hutchee, an enrolled Creek citizen. John and Luisa Beartail contended that Nocus Hutchee was their father, whereas defendants claimed title to the lands through conveyances executed by Lila Collins and Polly Washington, who claimed to be children of the allottee. The enrollment record of Nocus Hutchee and the respective claimants constituted a part of the documentary evidence. The trial court held that Nocus was the father of John and Luisa Beartail, and from that judgment an appeal was prosecuted, and upon appeal the case was reversed. The Atkins Case was cited as authority as to the weight to be given the enrollment records, and it was held that to overcome such enrollment records showing that Nocus was the father of Lila Collins and Polly Washington, the evidence must be clearly unambiguous and convincing. It is to be observed that the question involved in that case was one of identity. The court found that the testimony introduced by John and Luisa Beartail was unconvincing and unsatisfactory; that the information contained in the enrollment record constituted a presumption at least until overcome by other evidence.

From an examination of the record at bar we are of the opinion that the evidence therein contained is sufficient to overcome the presumption that might otherwise be indulged in support of the admittedly erroneous enrollment record as applied to Amon Fixico. Neither of the cases cited holds that the descriptive matter contained in the enrollment records is conclusive. On the contrary, both cases hold that such records can be overcome by clear and convincing evidence to the contrary. The information contained in the enrollment record of Amon Fixico is admittedly erroneous. The plaintiff admits he is enrolled opposite No. 5218 on the Creek rolls; by referring to that number we find the name, Emma Fixico; the sex, female; and the relationship to Cozar Fixico, daughter. The plaintiff admits that his name is Amon; that his correct sex is male and that he is not the daughter of Cozar Fixico. In the year 1913, the plaintiff caused to be filed with his enrollment record a number of affidavits for the purpose of having his enrollment corrected. Pursuant to the information contained in these affidavits, the Department corrected the enrollment of Emma Fixico as to his name and sex. These affidavits stated that there was no such person as Emma Fixico; that the person enrolled as Emma Fixico was in fact Amon Fixico; that he was a male child.

These affidavits also stated that Amon Fixico was not the son of Cozar Fixico. The very information upon which the Department corrected the descriptive matter with reference to the enrollment of Amon Fixico at least did not affirmatively show that he was the son of Cozar Fixico. These affidavits stated that Amon Fixico was not the daughter of Cozar Fixico, and when considered as a whole, they are in keeping with the judgment rendered by the trial court that Amon Fixico was not the son of Cozar Fixico.

The case of Norton v. Larney, 289 Fed. 395, 226 U. S. 511, 69 L. Ed. 413, supports the view that descriptive matter contained in the enrollment record is not conclusive. That case held that the exact name of the parents or the marital relation contained in the enrollment records was not binding or conclusive, because such information was not required to be found either by statute or as a necessary basis for a decision. It was there held that such information might be stated as an aid to identification, but that mistakes in such statements would in no way affect the validity of the patent, nor prevent the applicant from proving his identity. In that decision it was stated:

"The recital to the effect that Jacob Larney and wife were identical with 'Big Jack' and wife, and the recital of the roll numbers, were unnecessary and of no binding effect. Suppose that there had been an actual pending controversy whether the child whose application was being considered was the child of Jacob Larney and wife, or of 'Big Jack' and wife. It is clear, since the enrollment of all these four people had been approved by the Secretary of the Interior prior to March 3, 1905, as shown by the records in evidence, that the Commissioner would not have been called upon to decide the dispute as to parentage, and if he had decided it, the decision would not be binding. The only finding that was material for the Commissioner to make was that the enrollment of the parents, whoever they were, being citizens of the Creek Tribe, had been approved by the Secretary of the Interior prior to March 3, 1905."

The case of Cowe v. White, 120 Okla. 228, 251 Pac. 89, supports this view:

"Who were the heirs, and entitled to the possession of the allotment, was a judicial question to be determined by a court of competent jurisdiction. It was the right of each and all of the claimants to have their day in court to try their claims to the property."

We conclude that the descriptive matter contained in the enrollment record of Amon Fixico as to his name, sex, and parentage is not conclusive; that the Dawes Commission was admittedly in error in its original record as to the name and sex of Amon Fixico, and that the record before us clearly establishes that Amon Fixico was not the son of Cozar Fixico.

The judgment of the trial court is affirmed.

HUNT, CLARK, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. MASON, C. J., and LESTER, V. C. J., absent, not participating.

Note.—See "Indians," 31 C. J. § 31, p. 490, n, 86.